**Dr. Sammie LUCAS et ux.**

v.

**Clifford Earl HOOPER et al.**

**Civ. No. 6644.**

United States District Court,
M. D. Tennessee,
Nashville Division.

Aug. 16, 1974.

Avon N. Williams, Jr., Nashville, Tenn., for plaintiffs.

Carmack Cochran, Nashville, Tenn., for Hoopers and Mrs. Davis.

Clarence O. Ingram, Hermitage, Tenn., for Travises.

**1223**

MEMORANDUM

MORTON, District Judge.

This is a cross-action arising out of a suit by Dr. and Mrs. Sammie Lucas, a black couple, in which plaintiffs alleged racial discrimination against them in their attempt to purchase certain real estate located in Davidson County, Tennessee. Plaintiffs brought suit under the Civil Rights Act of April 9, 1866, which as amended appears in 42 U.S.C. § 1981 et seq., and under Title 8 of the Fair Housing Act, 42 U.S.C. § 3601 et seq.

Defendants in the principal action, and cross-defendants here, are Clifford Earl Hooper and Robert E. Hooper, doing business as C. Hooper Real Estate Company (hereinafter "Hooper"), and Hooper's sales representative in the contested transaction, Mrs. Sarah Davis. Co-defendants in the principal action, and cross-plaintiffs here, are the property owners, Wilmer J. and Mary D. Travis.

Prior to trial each defendant settled with plaintiffs. The case is now before the court on the defendants' Travises cross-action against the defendant realtors, on the theory that these defendants were not the agents for plaintiffs in the disputed sale, and that the actions of these co-defendants were accomplished without express or implied authority from the Travises. Cross-plaintiffs seek recovery for amounts expended in settlement with plaintiffs, plus costs and attorney fees.

FINDINGS OF FACT

Under date of June 15, 1971, the Travises executed an exclusive listing contract with Hooper for the sale of property at 2904 McGavock Pike, Nashville, Tennessee. The listing contract was to expire after 90 days, but contained an automatic renewal clause unless terminated by a 10-day notice prior to the lapse of each 90-day period. By letter of December 3, 1971, the owners terminated the listing contract as of De-

cember 15, 1971. However, Hooper did not remove the "For Sale" sign located in the front yard of the property. Therefore, this sign, bearing Hooper's name as realtor, remained in the yard of the contested residence at the time the instant controversy arose.

On January 19, 1972, Mrs. Lucas, while searching for residential property in the general area of McGavock School, saw the sale sign on the property at 2904 McGavock Pike. She immediately called Hooper, the listed real estate agency, and requested to be shown the property. An agent asked that she leave her name and number, and on Thursday, January 20, 1972, the defendant Davis returned the call. Mrs. Davis advised Mrs. Lucas that Hooper's listing on the property had expired, but that she would ask the owners if they still desired to sell. The Travises did, and agreed to make their home available for inspection by the prospective buyers on Sunday, January 23, at 3:30 P.M. Mrs. Davis called Mrs. Lucas again and advised her that the property could be shown the following Sunday and also informed her of the selling price, the amount of the first mortgage on the property and the amount of the owners' equity.

On January 23, 1972, Mrs. Davis again verified with the owners and Mrs. Lucas the time of the appointment that day. Mrs. Davis went to the property thirty minutes prior to the scheduled time and was informed by Mr. and Mrs. Travis that another individual had indicated some interest in the property and might also come by that afternoon. (There is no suggestion in the record that any serious negotiations had been conducted between the owners and this third party. On the contrary, it appears that the third party had never inspected the house, and there was no indication that there was any serious interest on his part). Mr. and Mrs. Travis decided to leave the premises while Mrs. Lucas was being shown the property, but asked that if the other interested buyer stopped by to have him await their return. Thus, Mr. and Mrs. Travis were not present when Mrs. Lucas and her daughter arrived for her appointment. After being shown the realty, Mrs. Lucas expressed a desire to purchase and tendered earnest money as evidence of her good faith. There is a dispute whether she definitely stated that she would purchase the property. The plaintiff insists that she did agree to buy and that she also asked that a contract be executed. The defendant Davis argued that plaintiff, although tendering earnest money, requested that an appointment be made the following morning for her husband, Dr. Sammie Lucas, to see the property. Mrs. Davis stated she did not accept the earnest money offered because she did not have a written contract for the purchase of the property and that it was her understanding that earnest money deposits should not be accepted absent a written contract of purchase.

At any rate, Mrs. Davis made an appointment to see Mrs. Lucas at Hooper's office early the following morning to either sign a contract or to have Dr. Lucas view the property and then sign a contract. However, prior to leaving the property on January 23, Mrs. Davis informed Mrs. Lucas that another person was interested in looking at the property. When asked by Mrs. Lucas whether this individual had tendered earnest money, Mrs. Davis replied that he had not.

After Mrs. Lucas and her daughter left the premises, the owners returned and were told by Mrs. Davis that she had a "nice colored family" who desired to make an earnest money deposit on the property. Thereupon, the Travises said there was a "color clause" in their deed which prevented them from selling property to blacks and that they would have to consult with their attorney. Despite Mrs. Davis' suggestion that the color clause was "outlawed," the Travises advised her that they would call her at a later time.

About two hours later Mr. Travis called Mrs. Davis and told her that his attorney had advised him that it would

be necessary for a suit to be filed in the Chancery Court of Davidson County, Tennessee to declare the clause "outlawed"; that it would be expensive, and that he did not want to tie up his property for that period of time. He further told Mrs. Davis that he would not sell his residence to the plaintiffs, and that the Hooper listing contract had expired. During this conversation or a previous one, the owners related to Mrs. Davis their concern with the possible reaction of neighbors if they sold their home to a Negro family. The Travises also conveyed concern about further integration of McGavock School, and, in general, felt the plaintiffs should not move into a neighborhood where they would be unwelcome.

Upon receipt of the information from the owners that they would not sell to Dr. and Mrs. Lucas, Mrs. Davis called the defendant Robert E. Hooper, one of the principals of C. Hooper Real Estate Company, and advised him of what had transpired up to that point. Mr. Hooper told Mrs. Davis to call Dr. and Mrs. Lucas and tell them exactly what Mr. Travis had told her. He also told her to obtain a contract offer from Dr. and Mrs. Lucas to present to the owners, Mr. and Mrs. Travis. This was the extent of any action taken by Mr. Hooper.

Immediately thereafter, about 9:00 or 9:30 P.M. on January 23, 1972, Mrs. Davis called Mrs. Lucas and related the information to her. Mrs. Davis informed her that the owners had said they had a "color clause" in their deed which prohibited this sale and that they would not sell to Negroes. Mrs. Davis stated that she felt the restriction had been "outlawed," and recommended that Dr. and Mrs. Lucas come to her office the next morning to sign a written offer to purchase.

Mrs. Lucas replied that it would be a waste of time, since the contract would not be accepted, but ended the conversation by saying that she would not let the matter drop. Then, on the morning of January 24, 1972, Mrs. Lucas informed Mrs. Davis that she was initiating legal action against the owners of the home at 2904 McGavock Pike and asked for the owners' names. Mrs. Davis refused to furnish this information, and on January 26, 1972, Dr. Lucas called and requested the same information. Mrs. Davis again refused.

On or about January 24, 1972, Mrs. Davis went to the property at 2904 McGavock Pike to pick up the real estate sign, still in the yard of the property. On that occasion she talked with Mrs. Travis and advised her that Dr. Lucas and his wife desired to know the names of the sellers which she, Mrs. Davis, had refused to give, and that some legal proceeding might ensue. In the presence of Mrs. Davis, Mrs. Travis removed the name from the mailbox located in front of the property.

Dr. and Mrs. Lucas subsequently found and purchased another piece of property located in the general area of 2904 McGavock Pike. As a result, the suit between plaintiffs Lucas and defendants became a suit for damages and was eventually settled.

## CONCLUSIONS OF LAW

It is now settled that suits alleging discrimination in housing can be filed and relief granted under 42 U.S.C. § 1982. Sullivan v. Little Hunting Park, 396 U.S. 229, 90 S.Ct. 400, 24 L.Ed.2d 386 (1969); Jones v. Mayer Co., 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968). Relief can likewise be sought under the provisions of Title 8 of the Fair Housing Act, 42 U.S.C. § 3601 et seq. Sec. 3604 makes it unlawful "(a) to refuse to sell or rent after the making of a bona fide offer, or *to refuse to negotiate for the sale or rental of,* or otherwise make unavailable or deny, *a dwelling to any person because of race, color, religion, or national origin.*" (Emphasis supplied).

It seems clear, and this court so holds, that the owners of this property, cross-plaintiffs herein, set out upon a definite and willful course to refuse to sell their property to Dr. and Mrs. Lucas because they were black. Although they

have projected various excuses, their principal defenses are two in number. The first is that they consulted an attorney and were advised that it would take litigation to permit them to sell to a black person because of a restrictive covenant in the chain of title of their property. This conclusion was obviously erroneous,* and the court finds no merit in this position. Barrows v. Jackson, 346 U.S. 249, 73 S.Ct. 1031, 97 L.Ed. 1586 (1953); Shelley v. Kraemer, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948).

The second defense is that their listing contract with Hooper had expired and they were under no legal obligation to sell their property to any person, black or white. This is a misconception of both the law and of the provisions of 42 U.S.C. § 3604(a). Under Tennessee law, a listing of real estate with a real estate agent need not be in writing. Lowe v. Wright, 40 Tenn.App. 525, 292 S.W.2d 413 (1956); Cobble v. Langford, 190 Tenn. 385, 230 S.W.2d 194 (1950). Furthermore, in granting the real estate agency the opportunity to show the property, there was an automatic extension of the written listing for this one showing.

Sec. 3604 prohibits not only the refusal to sell property to a person making a bona fide offer, but also the refusal to negotiate for the sale of property. The court has found that the Travises refused to sell their home to the Lucas couple, and it is certainly obvious that the owners were completely unwilling to even negotiate. Therefore, there was a complete violation of 42 U.S.C. § 3604(a).

Accordingly, the court having found the owners guilty of wilful and deliberate race discrimination in violation of 42 U.S.C. § 1982 and 42 U.S.C. § 3604, the cross-action against defendants Hooper and Davis must be dismissed. An appropriate order will be entered.

---

* It is to be noted that the restriction on which reliance was placed had expired two

years before the occurrence of the incidents in this case. Plaintiffs' Exhibit 2.