**VILLAGE OF BELLWOOD, an Illinois municipal corporation; Leadership Council for Metropolitan Open Communities, an Illinois not-for-profit corporation; Dianne Prince; Carolyn Lockett; Jerry Lockett; Fred Benford; Pamela Landry; Tracey Carter; and Alfred Allen, Plaintiffs,**

**v.**

**GOREY & ASSOCIATES, William Gorey, Betty Trela, and Warren Schroeder, Defendants.**

No. 86 C 6845.

United States District Court,
N.D. Illinois, E.D.

March 23, 1987.

---

F. Willis Caruso, Elizabeth Shuman-Moore, Leadership Counsel, Chicago, Ill., for plaintiffs.

Kevin R. Sido, Philip King, Hinshaw Culbertson Moelmann Hoban & Fuller, Nicholas M. Spina, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

This controversy arises out of a dispute regarding the availability of housing in several of Chicago's western suburbs. The nine plaintiffs alleged that the various defendants engaged in racial steering [1] in vio-

---

1. Racial steering has been defined as the practice of "directing prospective home buyers interested in equivalent properties to different areas according to their race." *Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 94, 99 S.Ct. 1601, 1605, 60 L.Ed.2d 66 (1979). *See also Havens Realty Corp. v. Coleman,* 455 U.S. 363, 366 n. 1, 102 S.Ct. 1114, 1118 n. 1, 71 L.Ed.2d 214 (1982).

lation of the Fair Housing Act of 1968, 42 U.S.C. § 3604[2] and the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1982.[3] Neither of the corporate plaintiffs is a stranger to these types of actions. *See Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979); *Village of Bellwood v. Dwayne Realty*, 482 F.Supp. 1321 (N.D.Ill.1979). Besides the two corporate plaintiffs, seven individuals have brought suit in their capacities as testers.[4]

The defendants have moved to dismiss with prejudice the individual plaintiffs from the suit for failure to state a claim under Fed.R.Civ.P. 12(b)(6). The defendants claim that all seven testers failed to allege proper standing under 42 U.S.C. §§ 3604 and 3612.[5] Furthermore, the defendants allege that three of the individual plaintiffs, Dianne Prince, Carolyn Lockett and Jerry Lockett, are time-barred by the statute of limitations from seeking relief under 42 U.S.C. § 3612(a). For the reasons described below, we grant in part and deny in part defendants' motion to dismiss.

**THE PARTIES**

Plaintiff Village of Bellwood ("Bellwood") is an Illinois municipal corporation and a western suburb of Chicago, with a population of approximately twenty thousand. Plaintiff, the Leadership Council for Metropolitan Open Communities ("Leadership Council"), is an Illinois not-for-profit corporation engaged in the promotion of "open housing" in the Chicago metropolitan area. The Leadership Council provides various services to minority group members who seek housing in the area. One of its programs involves the investigation of and assistance with housing discrimination complaints. *See Dwayne Realty*, 482 F.Supp. 1321, 1323.

The seven remaining plaintiffs, Dianne Prince, Carolyn Lockett, Jerry Lockett, Fred Benford, Pamela Landry, Tracey Carter, and Alfred Allen, are black testers employed by the Leadership Council. All of these testers are Illinois residents. One other black tester and seven white testers named in the complaint are not parties to this action.

2. This section provides in pertinent part:

As made applicable by section 3603 of this title and except as exempted by sections 3603(b) and 3607 of this title, it shall be unlawful—
(a) To refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, or national origin.
(b) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, or national origin.

\* \* \* \* \* \*

(d) To represent to any person because of race, color, religion, sex, or national origin that any dwelling is not available for inspection, sale, or rental when such rental is in fact so available.

3. This section provides that "[a]ll citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property."

4. A tester is not interested in purchasing a home. His or her goal is to visit a real estate agency and pose as an interested purchaser to determine whether the agency's principal and/or employees engage in racially discriminatory policies in violation of the Fair Housing Act of 1968. *Dwayne Realty*, 482 F.Supp. at 1321. *See also Havens Realty Corp. v. Coleman*, 455 U.S. at 371, 102 S.Ct. at 1121; *Hayden v. Oak Terrace Apartments*, 808 F.2d 1269, 1270 n. 1 (7th Cir.1987).

5. This section provides in pertinent part:
(a) The rights granted by sections 3603, 3604, 3605, and 3606 of this title may be enforced by civil actions in appropriate United States district courts without regard to the amount in controversy and in appropriate state or local courts of general jurisdiction. A civil action shall be commenced within one hundred and eighty days after the alleged discriminatory housing practice occurred: *Provided, however,* that the court shall continue such civil case brought pursuant to this section or section 3610(d) of this title from time to time before bringing it to trial if the court believes that the conciliation efforts of the Secretary of State or local agency are likely to result in satisfactory settlement of a discrimnatory housing practice complained of ...

The defendant Century 21 Gorey & Associates ("Gorey & Associates"),[6] has its offices in Westchester, Illinois, a community immediately south of Bellwood. That business is operated in some capacity[7] by the defendant William Gorey, a real estate broker licensed in Illinois. The two other defendants, Betty Trela ("Trela") and Warren Schroeder ("Schroeder"), are real estate salespeople employed by Gorey & Associates and licensed in Illinois.

### THE FACTS[8]

This suit arose over a series of business conversations and dealings beginning in August of 1985 and continuing through April, 1986. The tester plaintiffs were employed by the Leadership Council to determine whether housing discrimination existed in certain suburbs west of Chicago. On or around August 10, 1985, two white testers, David Kaczynski and Gail Patrik, spoke with defendant Trela at the offices of defendant Gorey & Associates.[9] They asked Trela about the availability of homes in Chicago's western suburbs in the $80,000 price range, expressing a preference for the community of Bellwood. The plaintiffs allege that Trela told the couple that they did not want to reside in Bellwood; she showed them two houses in Berkeley, a community with a very low black population, and one house in Broadview, a community with a black population smaller than Bellwood.

Two more white testers, Jack and Donna Bishop, visited the realtor's office on or about October 19, 1985, and also spoke to Trela. They said that they were interested in homes in Bellwood in the $70,000 price range. Saying that such housing was available, Trela asked the Bishops whether they "would be bothered by living around blacks." Complaint, para. 12. While the Bishops informed Trela that this was no problem, Trela still attempted to sell them a house in Broadview. The Bishops met with Trela again around November 3, 1985, and she showed them two residences in Westchester, a community similar to Berkeley in that few blacks reside there.

Trela was visited by black tester and plaintiff Dianne Prince around October 26, 1985. She requested information on $70,000–$80,000 residences in the mostly white community of Westchester. The plaintiffs allege that Trela urged Prince to consider two houses in Broadview instead, a community, they contend, that has a larger black population than Westchester. On approximately November 12, 1985, Prince again met with Trela; this time she was accompanied by David Whittaker, a black tester who is not a party to this action. Trela showed them one home in Broadview, and suggested that they also consider another residence in that community.

Plaintiffs Carolyn and Jerry Lockett, both black testers, visited Gorey & Associates on approximately March 1, 1986. They asked defendant Schroeder about Westchester residences in the $80,000–$90,000 price range. In addition to his attempts to discourage these plaintiffs from considering a Westchester home, the plaintiffs alleged that Schroeder showed them houses in both Bellwood and Broadview.

Diana Carpenter, a white tester, spoke with defendant Gorey at his offices on or about April 7, 1986, inquiring about homes in Bellwood, Hillside, and Westchester in the $60,000–$70,000 price range. Gorey es-

---

**6.** This defendant was wrongfully sued as "Gorey & Associates." *See* Answer of Gorey & Associates and William Gorey, p. 1. The plaintiffs are ordered to amend their complaint to properly name the defendants to avoid the dismissal of "Gorey & Associates" as a party to this complaint within ten days of the date of this Order. The defendants have twenty days to respond following the filing of the amended complaint.

**7.** In his answer, William Gorey objected to the plaintiffs' identification of him as the "registered principal" in their complaint as vague and ambiguous. *See* Answer of Gorey & Associates and William Gorey, para. 7.

**8.** For the purposes of this motion to dismiss, the Court will treat the following allegations of the complaint as true. *See Mathers Fund, Inc. v. Colwell Co.,* 564 F.2d 780, 783 (7th Cir.1977); *CNA Financial Corp. v. Local 743 of Int'l Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America,* 515 F.Supp. 942, 945 (N.D.Ill.1981).

**9.** All of the visits described herein allegedly occurred at the offices of defendant Gorey & Associates.

corted her to three Westchester residences and one Hillside residence, both communities where few blacks live. Carpenter was not shown any homes in Bellwood.

On approximately April 11, 1986, black testers and plaintiffs Fred Benford and Pamela Landry spoke to defendant Schroeder about homes in the $72,000–$82,000 price range in the communities of Westchester, Broadview, and Bellwood. Schroeder informed Benford and Landry that such housing was available in Bellwood (he allegedly showed them two houses in that suburb), but not in Westchester. The plaintiffs also allege that Schroeder showed them one Hillside home.

Victor and Sherry Gomez, two white testers, spoke with Trela around April 12, 1986, seeking information on the availability of housing in Bellwood, Hillside and Westchester in the $75,000 price range. Trela escorted the couple to homes in Berkeley, Westchester and Hillside, urging them to reside in those suburbs.

Approximately one week later, plaintiffs and black testers Alfred Allen and Tracey Carter asked Schroeder about Westchester residences in the $80,000–$90,000 range. Schroeder allegedly told the couple that a Westchester home in which they had expressed interest had been sold two days earlier; he took no further action to locate a house in Westchester for the plaintiffs. He suggested two Bellwood residences and one Berkeley residence. The listing prices for the two Bellwood homes were considerably lower than the price range quoted by the plaintiffs. Schroeder showed them one house in Bellwood and one house in Berkeley.

The plaintiffs claim that these events violated their statutory rights under 42 U.S.C. § 3604(a) to be provided with truthful information about housing availability. They also claim that the racial steering allegedly practiced by the defendants violated 42 U.S.C. §§ 3604 and 1982. Furthermore, the plaintiffs charge the defendants with willful and wanton disregard of those statutory rights. In its individual capacity, the Leadership Council claims that the actions of the defendants have substantially impaired both its efforts to eliminate housing discrimination and its servicing of minority homeseekers. Bellwood, in its individual capacity, claims that its racial composition has been injured by the defendants' manipulation of the housing market.

## DISCUSSION

Standing is a basic jurisdictional question, with its foundations in the requirement of Article III of the Constitution that all litigated federal matters involve a "case or controversy." *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975). The court must decided whether the plaintiff has sufficiently alleged a personal interest in the determination of the dispute which justifies the exercise of federal jurisdiction. *Id.; see also Williams v. Adams*, 625 F.Supp. 256, 259 (N.D.Ill.1985). To satisfy this requirement, the plaintiff must allege that he suffered a "distinct and palpable" injury at the hands of the defendant. *Duke Power Co. v. Caroline Environmental Study Group, Inc.*, 438 U.S. 59, 72, 98 S.Ct. 2620, 2630, 57 L.Ed.2d 595 (1978); *Warth v. Seldin*, 422 U.S. at 501, 95 S.Ct. at 2206.

The defendants have not challenged the standing of either Bellwood or the Leadership Council. The courts have previously addressed the standing of these two entities in their general capacities as municipal corporation and community organization, respectively. The United States Supreme Court favorably decided the issue of a community's standing to sue under the Fair Housing Act § 3604 in *Gladstone, Realtors. See* 441 U.S. 91, 109–11, 99 S.Ct. at 1612–13.[10] Furthermore, an organization such as the Leadership Council has standing to sue if the alleged steering practices "perceptively impaired" the organization's ability to service minority homeseekers. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379, 102 S.Ct. 1114, 1124, 71 L.Ed.2d 214 (1982); *see also Hope, Inc. v.*

10. Bellwood, incidentally, was the community involved in that suit.

*County of DuPage, Illinois,* 738 F.2d 797, 813–16 (7th Cir.1984).[11]

The defendants have, however, challenged the standing of the seven individual plaintiffs. Tester standing is not a novel issue. *See, e.g., Village of Bellwood v. Gladstone, Realtors,* 569 F.2d 1013 (7th Cir.1978), *aff'd subject to exception,* 441 U.S. 91, 99 S.Ct. 1601, 60 L.Ed.2d 66; *Havens Realty,* 455 U.S. at 373–76, 102 S.Ct. at 1121–23; *Watts v. Boyd Properties,* 758 F.2d 1482, 1484–86 (11th Cir.1985); *Dwayne Realty,* 482 F.Supp. at 1330. In this case, the defendants contend that testers who allege racial steering must reside in the "target area," that is, the community against which the racial steering is directed. *See Gladstone, Realtors,* 441 U.S. at 95, 99 S.Ct. at 1605. They contend that since the individual plaintiffs failed to allege that they are either residents of or homeowners in Chicago's western suburbs, this complaint must be dismissed. To support this contention, the defendants rely on three of the tester standing cases cited immediately *supra: Gladstone, Realtors, Havens Realty,* and *Dwayne Realty.* Their reliance on these cases, however, is misplaced.

The United States Supreme Court has recognized that a tester may possess standing to sue under two theories. One theory confers standing where the tester himself suffers actual harm through the actions of the defendant ("tester standing").[12] *Gladstone, Realtors,* 441 U.S. at 112–13 n. 25, 99 S.Ct. at 1614 n. 25; *Havens Realty,* 455 U.S. at 373–78, 102 S.Ct. at 1121–24. *See also Village of Bellwood v. Gladstone, Realtors,* 569 F.2d at 1016. *Accord Warth v. Seldin,* 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975). But in *Gladstone, Realtors,* 441 U.S. 91, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979), the Court never even decided whether the plaintiffs had standing under this theory since that issue was not presented to it. 441 U.S. at 111, 99 S.Ct. at 1614. In that case, the Supreme Court dealt only with the second theory—"neigh-

borhood" or "community" standing. Under this approach, the court considers the individual's status as a resident in the target area. *Gladstone, Realtors,* 441 U.S. at 111–12, 99 S.Ct. at 1614.

At the circuit court of appeals level, the *Gladstone, Realtors* court dismissed the tester plaintiffs because they failed to allege actual harm in their individual capacities, their damages as community residents notwithstanding. *Village of Bellwood v. Gladstone, Realtors,* 569 F.2d at 1016. That Seventh Circuit opinion did not foreclose the possibility that plaintiffs could have standing in their capacities as testers if injured. In the case before this Court, however, the seven individual testers have alleged "direct and palpable" injuries to their individual persons, the type of allegation which would have satisfied the Seventh Circuit. *See* Complaint, paras. 20–22; *see also, supra* note 12. The fact that the plaintiffs have not alleged that they resided within the target area is irrelevant.

Furthermore, in the second case relied upon by the defendants, there is a complete lack of dependence on the phrase "target area" or a similar concept. In *Havens Realty,* 455 U.S. 363, 102 S.Ct. 1114, the United States Supreme Court held that an individual who acted as a tester had standing to sue if he properly "alleged injury to [a] statutorily created right to truthful housing information." 455 U.S. at 374, 102 S.Ct. at 1122. Standing existed, for example, when the black petitioner alleged that she was informed that housing in a particular area was unavailable, while white testers were told such housing was available. *Id.* Therefore, if a tester fails to plead that he was in some manner victimized by a discriminatory misrepresentation, he lacks standing to sue under the Fair Housing Act. *See id.* at 374–75, 102 S.Ct. at 1122.

---

**11.** *But see Dwayne Realty,* 482 F.Supp. at 1130, where the Leadership Council was dismissed for lack of standing prior to the Supreme Court's decision in *Havens Realty.*

**12.** For the purposes of differentiation and discussion, the phrase "tester standing" will be used only to describe the first theory, rather than to describe "tester standing" as one concept with two separate and distinct theories.

The individual black plaintiffs in this case have alleged such an injury.[13]

The defendants also cite *Dwayne Realty*, 482 F.Supp. 1321, for the proposition that an individual plaintiff must allege that he is either a resident of or a homeowner in the target area. In that case, the complaint mirrored exactly the complaint in *Gladstone, Realtors*, discussed *supra*. 4812 F.Supp. at 1330.[14] The issue in that case was neighborhood standing. Therefore, *Dwayne Realty* does not support the defendants' proposition because the issue of "tester standing" was not properly before the *Dwayne Realty* court.

The defendants, in another effort to sustain their motion to dismiss based on a lack of standing, have asked this Court to create an exception to the requirement of notice pleading.[15] Notice pleading requires of the plaintiff only "a short and plain statement of the claim showing that [he] is entitled to relief." Fed.R.Civ.P. 8(a)(2). This means simply that the defendant in a federal lawsuit is entitled to fair notice of the complaint against him. *See Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957). The Seventh Circuit follows this rule. *See Sundstrand Corp. v. Kollsman Ind., Inc.*, 488 F.2d 807, 811 (7th Cir.1973); *Clark v. Universal Builders, Inc.*, 501 F.2d 324, 337 n. 15 (7th Cir.1974), *cert. denied*, 419 U.S. 1070, 95 S.Ct. 657, 42 L.Ed.2d 666, *on remand*, 409 F.Supp. 1274 (N.D.Ill.1976), *appeal after remand*, 706 F.2d 204 (7th Cir.1983); *Tankersley v. Albright*, 514 F.2d 956, 964 n. 15 (7th Cir. 1975).

The Federal Rules of Civil Procedure provide an exception to notice pleading: when either fraud or mistake is alleged, "the circumstances constituting fraud or mistake shall be stated with particularity."

Fed.R.Civ.P. 9(b). *See, e.g., Robison v. Caster*, 356 F.2d 924, 925–27 (7th Cir.1966) (complaint alleging conspiracy to defraud dismissed for lack of particularization); *Chicago Heights Venture v. Dynamit Nobel of America, Inc.*, 575 F.Supp. 214, 220 (N.D.Ill.1983) (count based on fraud dismissed where not all necessary particularizations were alleged), *aff'd*, 782 F.2d 723 (7th Cir.1986). The Seventh Circuit has recognized no further exceptions to this rule. Furthermore, this complaint meets the standard enunciated by the Seventh Circuit in *Hope, Inc. v. County of DuPage*, 738 F.2d 797, 815 (7th Cir.1984): it contains allegations of "specific and particular discriminatory acts."

■ The complaint in this case clearly meets the standard of notice pleading. The plaintiffs have alleged that they received unlawful information with respect to housing on various occasions. These allegations are sufficient to put the defendants on notice of the plaintiffs' claims. We reject the defendants' invitation to create a judicial exception to the Federal Rules of Civil Procedure.

The defendants also argue that plaintiffs Carolyn Lockett, Jerry Lockett, and Dianne Prince failed to allege that Trela and Schroeder made any statements to them regarding the availability of housing. However, Dianne Prince alleged that she asked Trela to show her Westchester homes. Prince says that Trela showed her one Westchester residence, but urged her to consider two homes in Broadview, a community with a larger black population than Westchester. Prince also alleges that on a second occasion, she and David Whittaker, another black tester, were shown a Broad-

---

**13.** The seven black plaintiffs alleged that the "[d]efendants made unlawful misrepresentations and untruthful statements that houses were not available for inspection when such houses were in fact available because of race, thereby denying [the] plaintiffs' statutorily protected right to be provided truthful information about housing availability." Complaint, para. 20.

**14.** The *Dwayne Realty* court stated that "[i]t is alleged in this complaint that as a result of defendants' conduct, the individual plaintiffs

have been deprived of the social and professional benefits of living in an integrated society." In *Gladstone, Realtors,* the Supreme Court had before it the same claims ..." 482 F.Supp. at 1330.

**15.** This and the following argument with respect to the standing of plaintiffs Jerry Lockett, Carolyn Lockett, and Dianne Prince under para. 20 of the complaint were raised for the first time in the Reply Memorandum in Support of Defendants' Motion to Dismiss.

view home by Trela; she asked them to also consider another Broadview residence. Complaint, para. 13. The Locketts alleged that they asked Schroeder about Westchester residences. They alleged that he discouraged them from purchasing a Westchester residence, and showed them two Bellwood homes and one Broadview home. Complaint, para. 15. As a result of this failure, the defendants contend, these plaintiffs lack standing under para. 20 of the Complaint, where the plaintiffs contend that the "[d]efendants made unlawful misrepresentations and untruthful statements that houses were not available for inspection when such houses were in fact available because of race, thereby denying [their] statutorily protected right to be provided truthful information about housing availability." Paragraphs 13 and 15, however, do raise an issue as to whether these three plaintiffs did indeed receive misrepresentations with respect to housing availability. A complaint cannot be dismissed if a set of facts is presented upon which relief could be granted. *Conley v. Gibson*, 355 U.S. 41, 44–45, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2233, 81 L.Ed.2d 59 (1984). The determination of the issue of misrepresentation is a question for the trier-of-fact.[16]

The defendants have also moved to dismiss from the lawsuit Carolyn Lockett, Jerry Lockett and Dianne Prince, contending that these plaintiffs are time-barred from seeking relief under the Fair Housing Act. Section 812(a) of the Act provides that "a civil action shall be commenced within one hundred and eighty days after the alleged

discriminatory housing practice occurred." That statute of limitations encompasses, among others, actions brought pursuant to § 3604.[17]

While the limitations period in § 3612(a) is intended to keep stale housing discrimination claims out of court, *Havens Realty*, 455 U.S. at 380, 102 S.Ct. at 1125, equity may require that time bars be ignored. *See Kolomick v. United Steelworkers of America, Dist. 8*, 762 F.2d 354, 356 (4th Cir.1985) (contains citations to various cases illustrating elimination of time bars). In *Havens Realty Corp. v. Coleman*, the Court decided that a continuing violation of the Fair Housing Act should be accorded different treatment than "one discrete act of discrimination." *Havens*, 455 U.S. at 380, 102 S.Ct. at 1125.[18] The very nature of a continuing violation eliminates the concern of stale claims. *Id.* The *Havens* court, finding that the allegations of discriminatory conduct under the Fair Housing Act which began prior to and continued into the one hundred eighty day limitation period constituted behavior of a continuing nature, suspended the time bar with respect to the individual plaintiffs' "neighborhood standing." *Id.* at 381, 102 S.Ct. at 1125. However, the Court would not apply the "continuing violation" theory to a plaintiff's claim based on "tester standing" because she could not allege that the alleged racial steering incidents involving another tester during the one hundred eighty day period deprived her of her right to receive truthful housing information. *Id.* at 381, 102 S.Ct. at 1126.

---

16. Furthermore, this contention is of de minimus importance because the three plaintiffs have standing under other portions of the Complaint. The issue of whether these particular plaintiffs have in fact suffered the injuries alleged in para. 20 can be handled through discovery.

17. *See supra* note 5.

18. *See also United States v. Yonkers Board of Education*, 624 F.Supp. 1276, 1374 n. 72 (S.D.N.Y.1985) (where allegations that racial segregation resulted from subsidized housing programs involved, statute of limitations no bar to suit because incidents over many years were "part of

a continuing pattern and practice of discrimination"); *Heights Community Congress v. Hilltop Realty, Inc.*, 629 F.Supp. 1232, 1251 (N.D.Ohio 1983) (alleged racial steering violations which continued into one hundred eighty day limitation period not time-barred), *aff'd in part, rev'd in part*, 774 F.2d 135 (6th Cir.1985) (affirmed that statute no bar), *cert. denied*, — U.S. —, 106 S.Ct. 1206, 89 L.Ed.2d 318 (1986). *Accord Taylor v. The Home Insurance Co.*, 777 F.2d 849, 856 (4th Cir.1985) ("continuing violation" theory applied in age discrimination suit), *cert. denied*, — U.S. —, 106 S.Ct. 2249, 90 L.Ed.2d 695 (1986).

In this case, the complaint was filed September 11, 1986. Dianne Prince alleges that her rights were violated on approximately October 26, 1985, Complaint, para. 13; the Locketts, approximately March 1, 1986. Complaint, para. 15. Both of these alleged violations fall outside of the one hundred eighty day limitation period. The allegations involving other plaintiffs which fall inside the one hundred eighty day period cannot be used with the "continuing violation" theory to sustain Prince's and the Locketts' standing. Thus, these three plaintiffs are barred from seeking relief under § 3604 and their § 3604 claims are dismissed.

The defendants contend that Dianne Prince, Jerry Lockett and Carolyn Lockett are also barred from seeking relief under § 1982 because they have failed to sufficiently state a cause of action under that statute. We disagree.

Causes of action under §§ 1982 and 3604 are independent and concurrent. *Bush v. Kaim*, 297 F.Supp. 151, 161 (N.D. Ohio 1969); *Johnson v. Zaremba*, 381 F.Supp. 165, 168 (N.D.Ill.1973). *See also Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 416, 88 S.Ct. 2186, 2191, 20 L.Ed.2d 1189 (1968) (§ 1982 claims neither limited nor enhanced by passage of Fair Housing Act); Annot., *Validity, Construction, and Application of Federal Civil Rights Statute Dealing with Property Rights of Citizens*, 20 L.Ed.2d 1768 (1967). The § 1982 plaintiff must allege that he directly suffered discrimination with respect to his property rights because of his race. *See Jones*, 392 U.S. at 421–422, 88 S.Ct. at 2194; *Clark v. Universal Builders, Inc.*, 501 F.2d 324, 334 (7th Cir.1974), *cert. denied*, 419 U.S. 1070, 95 S.Ct. 657, 42 L.Ed.2d 666. One court has specifically found that the requirements necessary to establish a prima facie case under § 1982 with respect to housing discrimination are the same as under the Fair Housing Act. *See McHaney v. Spears*, 526 F.Supp. 566, 574 (W.D.Tenn.1981). *See also United States v. West Peachtree Tenth Corp.*, 437 F.2d 221 (5th Cir.1971) (Fair Housing Act

claim does not necessarily encompass a § 1982 claim). Therefore, suits alleging housing discrimination can be filed and relief granted under both § 1982 and the Fair Housing Act. *See Lucas v. Hooper*, 381 F.Supp. 1222, 1225 (M.D.Tenn.1974).[19]

The Locketts and Prince have alleged that they have been discriminated against with respect to their property rights. The three plaintiffs allege that they were steered to particular communities because of the racial composition of those communities. Complaint, paras. 13, 15. These allegations establish the requirements necessary to bring a claim under § 1982.

CONCLUSION

For the reasons described above, we deny the defendants' motion to dismiss plaintiffs Fred Benford, Pamela Landry, Tracey Carter, and Alfred Allen. Furthermore, we grant the motion to dismiss plaintiffs Dianne Prince, Jerry Lockett and Carolyn Lockett *solely* with respect to their claims under § 3604 of the Fair Housing Act. We deny the motion to dismiss these three plaintiffs with respect to their claims under Title 42 U.S.C. § 1982. It is so ordered.

---

**19.** *But see Morris v. Cizek*, 503 F.2d 1303 (7th Cir.1974) (held that Fair Housing Act's Section 3603(b)(2) exemption, not an issue in this case, is inapplicable to § 1982 claim).