Joseph **BRANDEL** and Debbie Brandel, Plaintiffs–Appellants,

v.

**MOORE MORTGAGE AND INVESTMENT COMPANY,** Defendant–Appellee.

Court of Appeals of Tennessee, Western Section, at Knoxville.

Jan. 9, 1989.

Application for Permission to Appeal Denied by Supreme Court June 5, 1989.

John P. Newton, Jr., Knoxville, for plaintiffs-appellants.

Norman P. Jackson, Knoxville, for defendant-appellee.

CRAWFORD, Judge.

In this nonjury case, plaintiffs, Joseph Brandel and Debbie Brandel, appeal from the judgment of the trial court for defendant, Moore Mortgage and Investment Company.

Plaintiffs' complaint alleges that they submitted a loan application to defendant on March 1, 1987, for a Veterans Administration guaranteed loan with a 60–day lock-in rate of eight percent interest and three discount points. Plaintiffs further allege that although defendant agreed to make the loan applied for, defendant informed them on or about April 20, 1987 that defendant would not make the loan at eight percent interest because the interest rate had risen to nine and one-half percent and the rate for discount points had risen from three percent to three and one-half percent. Plaintiffs aver that because the defendant refused to loan the money as contracted, they suffered losses due to the rise in the interest rate and discount points. Plaintiffs further aver that because they relied upon the agreement with the defendant, they lost other opportunities to "lock in" an eight percent VA loan offered by similar companies in Knox County. Plaintiffs also allege that defendant violated the Tennessee Consumer Protection Act, T.C.A. § 47–18–101 et seq.

Defendant's answer joins issue on the allegation of the complaint and denies the existence of an agreement or contract with the plaintiffs.

Plaintiff, Joseph Brandel, testified that he and his wife entered into a sales contract dated March 2, 1987, with Roy and Patricia Thomas to purchase a certain lot and improvements in Knoxville for $91,000. The contract provided for plaintiffs to obtain a VA guaranteed loan in the amount of $91,000, payable over a period of 30 years with an interest rate of eight percent per annum. After executing the contract, Brandel contacted several mortgage companies concerning the required loan and decided to apply for the loan with the defendant. No actual written "application" for a loan was introduced into evidence, but plaintiffs rely upon a document titled "Loan Registration Authorization" as the application. This document provides as follows:

LOAN REGISTRATION
AUTHORIZATION

To The Borrower:

You have the option of either locking in your loan's interest rate (initial rate if ARM) and points or letting them float with market. This authorization sets in writing your decision to lock or not to lock and explains the effects of that decision—

*LOCKED:* If your rate and points are locked in now, at application, they are committed, subject to loan approval, for a period of 60 days. If for any reason your loan cannot be closed within the 60–day protected period, the lock-in may be extended, as originally set, for a maximum of 10 more days, or extended at current market level if the latter is higher. Note that in any event whether you get an extension or not, your loan cannot be closed at a lower rate and points than you had locked in originally.

*FLOAT:* If you elect to float the rate and points, you are of course betting that borrowing costs will be lower by the time you close than they are now. Regardless of which direction rates may take, you will be able to lock them in only on a date within ten (10) days of your closing date; and once they are locked in, your loan will have to close bearing the terms that you have selected and locked.

*X* I elect to lock my interest rate at *8%*, and my points at *3%*. (Points are not inclusive of the loan origination fee.) This lock is good for *60* days.

/s/ Joe Brandel Date: 3 March 87

/s/ Debra G. Brandel Date: 4-1-87

Plaintiff Joseph Brandel further testified that it was his understanding of the meaning of the above instrument that he had a "lock in" for a period of 60 days at the rate of eight percent and that as long as he closed the loan within that time he was entitled to the interest rate agreed upon. He testified that after signing the above document, he was furnished a document dated April 7, 1987, purporting to be a supplement to their application, which in the first paragraph of the printed form stated:

Supplementing my/our application for mortgage loan of even date respecting the premises at the above location, should I/we apply for a FHA/VA loan, I/we agree that in the event the interest charge authorized by the FHA/VA is increased between the date of this application and the date of closing of the loan applied for, I/we will accept a loan at such higher interest charge. I/we understand that your acceptance of my application in no way constitutes commitment by your company to make this loan to me.

Brandel stated that he requested defendant's loan originator, Chris White, to strike out the above paragraph. Instead, according to Brandel, White only marked through the first sentence, leaving the second sentence intact. Brandel testified that White told him that this was to protect the mortgage company in case the Brandels had bad credit. He further testified that White told him that his interest rate was locked in for sixty days at eight percent and three discount points if the loan was approved. He and White went over the estimated closing costs, and the monthly payments based on the interest rate which he says they agreed upon.

Brandel stated that later he was contacted by Peggy Diegle who advised him to pick up his VA commitment papers. She also told him that Moore Mortgage would be willing to close earlier than the scheduled closing date of April 23, 1987, but he refused to do so. He was advised about April 12, 1987, that the VA had raised the interest rate to nine and one-half percent and that Moore Mortgage would be willing to close the loan based upon that interest rate, but not the eight percent rate previously discussed. He subsequently cancelled the application with Moore Mortgage and obtained a loan at a nine and one-half percent interest rate from another mortgage company.

Plaintiffs also presented the testimony of Chris White, a former employee of Moore Mortgage and the loan representative that worked with plaintiff on his loan. White testified that he told plaintiffs that in a VA guaranteed loan, the interest rate is locked in unless the rate allowed by the VA is changed, then the interest rate and the

discount "become unlocked" and must be renegotiated. He agreed with Brandel's testimony that he lined out the material on the supplemental application at plaintiff's request and that he did this because he understood that the Brandels did not want a loan at any rate other than eight percent. He further testified that since this was a VA loan, he made it clear to the Brandels that it was subject to both an interest rate change and a discount point change.

Defendant presented the testimony of James Michael Moore, President and Chief Executive Officer of defendant. Moore testified that he was originally contacted by plaintiffs regarding the loan and that he turned them over to White, the loan officer. The next involvement he had with the Brandels was after the VA rate change when Mr. Brandel came to Moore's office. The plaintiffs were offered the loan at the then current rate of nine and one-half percent interest, but they declined. He further testified that the form signed by the Brandels concerning the lock-in of the interest rate was used when the applicants want only the loan applied for and if it cannot be made at that rate, the applicant is not otherwise obligated. He stated that under no circumstances does his company ever guarantee any interest rate and discount on VA loans, and his company reserves the right to raise the interest rate between the time of application and closing by virtue of the statement in the form signed by plaintiffs dated April 7, 1987, which states: "I/we understand that your acceptance of my application in no way constitutes commitment by your company to make this loan to me."

Defendants also presented testimony from two other mortgage bankers who testified that the interest rate on VA guaranteed loans is volatile and mortgage companies generally do not bind themselves to locked in interest rates.

At the conclusion of the trial the judge delivered his opinion from the bench and stated in part:

... Now, as far as what this lock-in or locked in or locked provision means, as I've said, the plaintiffs contend that this means that the defendant had offered and was bound for a period of sixty days to provide them the loan under the terms, but yet the defendant, in addition to what I said earlier, maintains that this—in the way they've done in this case, meant that the plaintiffs stated that they would pay eight percent and they would pay the three points which they agreed to three points and no more, and that if that could not be provided, if the rate did change, that they would not have to go through with it themselves, that they were protected from that standpoint. It's a very interesting situation here. I think it could have been more clear to the plaintiffs at the time they made this loan. Of course, there is a dispute about what was said at that time between what Mr. Brandel said was said and what Mr. White said was said, there's a dispute about what was said as far as the VA loan was concerned. This Loan Registration Authorization does not talk about VA or FHA or any kind of loan. There's some dispute about what was said at that time. There's also a dispute about what the plaintiffs could have obtained from other sources. The plaintiffs indicate they feel they could have obtained a guaranteed eight percent or some guarantee at that time in early March, but there's no proof that they could have. In fact, the proof that is in the record is to the contrary to that, that they could not have obtained a guarantee. So I think the proof at this point is that in early March the loan was processed and completed. You know, at that time they could have obtained the rate at a number of places around, but there was no place that they could obtain a guarantee—or other place that they could have obtained a guarantee in early March relating to the end of April, when they went to close this loan. The proof is contrary to that. Considering all these documents together, this phrase or sentence that acceptance of the application in no way constitutes commitment to make a loan and there being no—nothing in writing signed by the defendant to the contrary, I think the defendant's position

is probably the one the Court is required to follow here, you know, that they did by signing, certainly did not obligate themselves and didn't have to go through with this loan, but at the same time the defendant isn't obligated to go through with it either.

Judgement was entered for defendant from which plaintiffs have appealed. Plaintiff's first issue for review as rephrased is whether the trial court erred in finding that the defendant was not bound by contract to make the loan as applied for by plaintiff.

■ We should comment initially on defendant's assertion that the transaction herein falls within the statute of frauds. We tend to agree with defendant's basic assertion. T.C.A. § 29–2–101 (1980) provides:

> 29–2–101. **Writing required for action.** —No action shall be brought:
>
> *     *     *     *     *     *
>
> (4) Upon any contract for the sale of lands, ... unless the promise or agreement, upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person by him thereunto lawfully authorized.

The purpose of the statute is to protect owners of land from hasty or inconsiderate agreements concerning a valuable species of property, and to guard against misunderstanding as to the nature and extent of such agreements. *Whitby v. Whitby*, 36 Tenn. (4 Sneed) 473, 478 (1857); *Johnson v. Haynes*, 532 S.W.2d 561, 565 (Tenn.App. 1975).

In *Southern Industrial Banking v. Delta Properties*, 542 S.W.2d 815 (Tenn.1976), plaintiff sued a "commercial loan institution for damages arising out of the alleged breach of an oral agreement by the loan company to lend ... $20,000 on a land purchase." *Id.* at 816. Justice Fones, speaking for the court, said:

> The threshold legal issue asserted by defendant is that the oral agreement to lend plaintiff $20,000 on the security of a deed of trust on real estate falls within the statute of frauds, T.C.A. § 23–210(4).
>
> Defendant relies upon *Lambert v. Home Federal Savings and Loan Association*, 481 S.W.2d 770 (Tenn.1972), wherein the Court held that the promise to convey to another a lien or charge upon land, as security for a loan, is equivalent to a promise to sell an interest in land, and is therefore governed by section four of the statute of frauds. The instant case falls squarely within the ambit of *Lambert* and must be treated as a contract for the sale of land, in our determination of the application of the statute of frauds to the agreement upon which plaintiff predicated his cause of action.

*Id.* at 817.

■ The transaction in the instant case is in the same category as the transaction in *Southern Industrial Banking* and therefore falls within the statute of frauds. In order to satisfy the statute, there must be a writing or memorandum signed by the party to be charged setting out the agreement. T.C.A. 29–2–101 (1980). The memorandum " 'must contain the essential terms of the contract expressed with such certainty that they may be understood from the memorandum itself or some other writing to which it refers or with which it is connected, without resorting to parol evidence.' " *Lambert v. Home Federal Svgs. & Loan Ass'n*, 481 S.W.2d 770, 773 (Tenn. 1972). However, the statute of frauds is an affirmative defense and must be specially pled. Rule 8.03 Tenn.R.Civ.P. To rely upon the statute of frauds as a defense, it must be pleaded. *Bailey v. Henry*, 125 Tenn. 390, 143 S.W. 1124 (1912).

To establish the agreement alleged in their complaint, plaintiffs relied upon the sales contract and the paper writings furnished by defendant in connection with the loan. These documents, admitted as exhibits in the cause are:

1. Sales Contract
2. Loan Registration Authorization
3. Loan Application Supplement
4. Disclosure Statement
5. Settlement Charges
6. Veteran's Statement
7. Cancellation Document

8. Settlement Statement
9. Deed of Trust Note
10. Appraisal Document.

Some of the documents are signed by plaintiffs, but none are signed by defendant.

The special plea of the statute of frauds required by Rule 8.03, Tennessee Rules of Civil Procedure, is that the "party shall set forth affirmatively facts in short and plain terms relied upon to constitute ... statute of frauds." In the case at bar, defendant's answer does not question the sufficiency of the paper writings as memoranda to satisfy the statute, but the specific defense made by defendant is that *it did not execute* any paper writing whereby it agreed to make a loan to plaintiffs. This same theory was relied upon by defendant in its argument to the trial court and the record reflects that the defendant never asserted in the trial court that the content of the memoranda relied upon by plaintiffs does not satisfy the statute of frauds. On appeal, defendant, along with its assertion regarding its signature, for the first time questions the sufficiency of the content of the memoranda. This assertion by defendant comes too late. Questions not raised in the trial court will not be entertained on appeal. *Lawrence v. Stanford*, 655 S.W.2d 927 (Tenn. 1983). However, from our examination of the documents and the record as a whole, we are of the opinion that the content of the documents is sufficient to satisfy the statute of frauds. *See Lambert*, 481 S.W.2d at 773.

█ Defendant contended in the trial court and contends in this Court that it was not obligated to make the loan to plaintiffs because it had not signed any agreement to that effect. In this Court, defendant specifically argues that the signatures of plaintiffs on the memoranda do not satisfy the requirement for signing by "the party to be charged." T.C.A. 29–2–101 (1980). Defendant states that it is the "party to be charged" and the absence of its signature is fatal to plaintiffs' case. In other words, defendant asserts that it is the "party to be charged" whose signature is required by T.C.A. 29–2–101. We disagree. Our Supreme Court in *Southern Industrial Banking*, made it clear that under the statute, the party to be charged in a controversy between a borrower and a lender whose loan is to be secured by a deed of trust on land is the borrower. The Court said:

[U]nder our controlling decisions, plaintiff, as owner of the interest in the real property to be conveyed, is the party to be charged and its signature on the appropriate memorandum is indispensable. In *Ashley and Gibbs v. Preston*, 162 Tenn. 540, 39 S.W.2d 279 (1931), Mr. Justice McKinney writing for the Court said: "The reason given by this court for so construing the statute is thus stated in *Whitby v. Whitby*, 36 Tenn. (4 Sneed), 473, 478:

'It obviously was designed to protect the owners of land from being drawn into hasty or inconsiderate agreements in relation to what is deemed the more valuable and important species of property, and to guard against misunderstanding as to the nature and extent of such agreements; and hence the provision that the owner should not be divested of his title except by evidence in writing, signed by himself. This in substance is the letter and spirit of the statute.'"

162 Tenn. at 544, 545, 39 S.W.2d at 280. We continue to adhere to the owner—vendor application of the party to be charged rule, in real property cases. To do otherwise, in our opinion, opens the door to misunderstanding as to the nature and extent of such agreements. This case is a classic example as will hereinafter appear.

*Id.* at 818.

█ In the case at bar, the requirement of the statute is met by the signatures of plaintiffs on some, although not all, of the documents. It is not necessary that the party to be charged sign each paper writing forming a part of the agreement where the writings on their face relate to one another. *Yates v. Skaggs*, 187 Tenn. 149, 213 S.W.2d 41 (1948); *Williams v. Buntin*, 4 Tenn.App. 340 (1927).

█ Having determined that the documents in evidence satisfy the require-

ments of the statute of frauds, we will now consider the agreement between the parties. Plaintiffs contend that they satisfied all the conditions precedent for approval of the loan, and therefore the loan became binding upon the defendant. The trial court, in its findings, noted that there was a misunderstanding initially between the parties as to what their agreement was and pointed out the discrepancy in the testimony between plaintiff Joseph Brandel and his witness, Chris White, and also the further discrepancy in the testimony between plaintiff Brandel and the witness Moore. Since this case was tried by the court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error of law. T.R.A.P. 13(d).

Although there was sharp conflict in the testimony of plaintiff on the one hand and representatives of the defendant mortgage company on the other, as to their understanding of the language of the various instruments signed by plaintiffs, we believe that the true resolution of this conflict comes from the language of the written memoranda. The most significant document is the "Loan Registration Authorization" signed by plaintiffs which explicitly represents to the plaintiffs, as borrowers, that they have the option of a "locked" interest position or a "float" interest position. It is undisputed that plaintiffs elected the locked interest position. We quote again the language of the instrument in this regard:

*LOCKED:* If your rate and points are locked in now, at application, they are committed, subject to loan approval, for a period of 60 days. If for any reason your loan cannot be closed within the 60–day protected period, the lock-in may be extended, as originally set, for a maximum of 10 more days, or extended at current market level if the latter is higher. Note that in any event whether you get an extension or not, your loan cannot be closed at a lower rate and points than you had locked in originally.

Considering the instrument as a whole, giving the language of the instrument, especially this provision, its usual and ordinary meaning, it is apparent that the language provides that the locked in provision obligates the loan company to make the loan at the locked in interest rate once the loan is approved. The documents set forth a classic example of a conditional contract. "A conditional contract is a contract the very existence and performance of which depends upon the happening of some contingency or condition expressly stated therein." *Buchanan v. Johnson,* 595 S.W.2d 827, 830 (Tenn.App.1979).

In the case before us, it is uncontroverted that plaintiffs were notified about April 4, 1987 that their loan had been approved and defendant sought to schedule the loan closing on an earlier date than originally agreed. After the interest rates went up about April 10, 1987, defendant sought to apply the higher rates to plaintiffs' loan. The loan company's assertion that the provision allows a locked in rate until ·the interest rate is changed defeats the essential purpose that a locked in provision is designed to prevent. It is clear from the provisions of the Loan Registration Authorization that plaintiffs had an election between a "locked in" provision or a "floating" provision. The floating provision is exactly the provision that fits the description of defendant's assertion. It is absurd to contend that the borrowers are given an election between two provisions which provide for essentially the same thing.

Although there are sharp conflicts in the testimony of the witnesses as to what was said, and the weight, faith and credit to be given to the witnesses' testimony lies in the first instance with the trier of fact and is entitled to great weight in this Court, *Town of Alamo v. Forcum–James Co.,* 205 Tenn. 478, 327 S.W.2d 47 (1959), *Sisk v. Valley Forge Ins. Co.,* 640 S.W.2d 844 (Tenn.1982), we believe the language of the written memoranda furnished by the defendant and signed by the plaintiffs sufficiently contradicts the testimony introduced on behalf of the defendant. From our review of this evidence, we cannot agree with the trial court that defendant had not obligated

itself to make the loan as applied for by plaintiffs. Therefore, judgment should have been entered for plaintiffs. Plaintiffs are entitled to recover the present value of the difference between the mortgage loan payments based on an eight percent interest rate and a nine and one-half interest rate over the period of the loan. The case should be remanded to the trial court for such further proceedings as necessary to determine the amount of damages.

 The second issue presented by plaintiffs for review which we quote from plaintiff's brief is "whether the trial court erred in not finding under the facts that the plaintiff had stated a cause of action under the Tennessee Consumer Protection Act, T.C.A. § 47–18–101 et seq."

Plaintiffs have failed to cite in their brief anywhere in the record where the trial court held that plaintiffs had not stated a cause of action under the Tennessee Consumers Protection Act. From our review of the record, we have been unable to locate any such holding by the trial court, so we cannot say with certainty that the court considered the case either within or without the purview of the Act. However, implicit in the findings of the trial court is a finding that the defendant did not willfully or knowingly engage in the use of deceptive or unfair acts. Such a finding is essential for recovery of treble damages under the Act. *See* T.C.A. § 47–18–109(3)(1988). The evidence in the record does not preponderate against the trial court's findings in this regard. Therefore, if the transaction is within the purview of the act, plaintiffs would not be entitled to recover treble damages. This issue is without merit. Furthermore, we have found that a valid contract existed between the parties based on the language of the document. Since there is a contract requiring defendant to make the loan at the agreed upon interest rate, there is no false representation existing.

The judgment of the trial court is reversed and judgment is entered for plaintiffs. The case is remanded to the trial court for further proceedings to determine the amount of damages in accordance with this opinion. Costs of appeal are assessed against the appellee.

TOMLIN, P.J. (W.S.), and FARMER, J., concur.