**IN THE COURT OF APPEALS OF TENNESSEE,**
**AT JACKSON**

FILED

**March 2, 1999**

Cecil Crowson, Jr.
Appellate Court Clerk

|   |   |   |
|---|---|---|
| **STEVE ANDERSON**, | ) | Shelby County Chancery Court |
| | ) | No. 108502-3 R.D. |
| Plaintiff/Appellant. | ) | |
| | ) | |
| VS. | ) | C.A. No. 02A01-9711-CH-00288 |
| | ) | |
| **HACKS CROSSING PARTNERS, et al**, | ) | |
| | ) | |
| Defendants/Appellees. | ) | |
| | ) | |

From the Chancery Court of Shelby County at Memphis.
**Honorable D. J. Alissandratos, Chancellor**

**William L. Hendricks, Jr.**,
**Lisa E. Circeo**,
GLANKLER BROWN, PLLC, Memphis, Tennessee
Attorneys for Plaintiff/Appellant.


**John McQuiston, II**, EVANS & PETREE, Memphis, Tennessee
Attorney for Defendants/Appellees (other than Exxon Corporation).


**C. Thomas Cates**,
**R. Porter Feild**,
BURCH, PORTER & JOHNSON, PLLC, Memphis, Tennessee
Attorneys for Defendant/Appellee Exxon Corporation.

OPINION FILED:

**AFFIRMED AND REMANDED**


**FARMER, J.**

**CRAWFORD, P.J.,W.S.**: (Concurs)
**HAYES, J.**: (Concurs)

Plaintiff Steve Anderson appeals the trial court's order which dismissed his complaint seeking specific performance and other relief against Defendants/Appellees Hacks Crossing Partners and Exxon Corporation. We affirm.

The facts in this case were largely undisputed. On July 19, 1996, Steve Anderson and William R. Powell, Jr., executed a contract whereby Anderson agreed to purchase and Powell agreed to sell a parcel of real property located on the southwest corner of Shelby Drive and Hacks Cross Road in Shelby County. In executing the contract, Powell purported to be acting as a partner of the seller, Hacks Crossing Partners (Partnership). On behalf of the Partnership, Powell agreed to sell the property, which consisted of approximately 60,000 square feet, at a price of $10 per square foot. The contract indicated that Powell had received the sum of $5000 as earnest money and in part payment for the purchase of the property. In accordance with this provision, Anderson offered to write a check for the earnest money; however, Powell informed Anderson that it would not be necessary for him to pay the earnest money at the time the contract was executed.

In executing the purchase agreement, Anderson and Powell signified their mutual understanding that "Exxon [had] a prior option contract on [the subject] property" and that the purchase agreement was merely "a backup contract to the Exxon option contract dated December 11, 1995." At the time he executed the purchase agreement, Anderson had not seen a copy of Exxon's option contract, and the purchase agreement did not indicate when the option contract expired. Shortly after executing the purchase agreement, therefore, Anderson called Powell to ask him when Exxon's option expired. Powell informed Anderson that Exxon's option would expire on Friday, August 2, 1996.

On or about August 2, 1996, Anderson called Powell to inquire as to whether Exxon had exercised its option. At that time, Powell informed Anderson that he orally had agreed to extend Exxon's option through Friday, August 9, 1996. From that point in time, the parties' respective versions of events varied somewhat. According to Anderson, when he contacted Powell on either Friday, August 9, 1996, or Monday, August 12, 1996, Powell informed him that Exxon had not exercised its option and that Powell and Anderson "had a

deal." Approximately one week later, however, Anderson received a letter from Powell informing him that Exxon, in fact, had exercised its option.

In contrast, Powell denied that Exxon's option expired on August 9, 1996. According to Powell, on August 9, 1996, an Exxon representative called him and informed him that Exxon planned to exercise its option but that "it was going to take a few days to get the paperwork in." Consequently, Powell orally agreed to extend Exxon's option by an additional week. Six days later, on August 15, 1996, Exxon faxed a letter to Powell indicating that it was exercising its option to purchase the subject property.

Jeff McKinney, the real estate agent representing Exxon Corporation, corroborated Powell's statement that Exxon's option had been extended by oral agreement to August 15, 1996, the date on which Exxon exercised its option. McKinney's version of events differed from Powell's, however, in that McKinney did not remember discussing the earlier extension dates of August 2, 1996, and August 9, 1996. The only extension date McKinney recalled discussing was August 15, 1996.

After learning that Powell planned to sell the subject property to Exxon, Anderson attempted to tender to Powell a $5000 check for the purchase agreement's earnest money, but Powell refused to accept the check. When Anderson attempted to learn details about Exxon's option contract, he discovered that the written option contract referenced in the July 1996 purchase agreement had expired on April 28, 1996, before the purchase agreement even was executed. Contending that no valid option existed which could be exercised by Exxon, Anderson objected to Powell's sale of the land to Exxon and insisted that the property be sold to Anderson; however, Powell and Exxon took the position that they orally had agreed to extend Exxon's option through August 15, 1996, and, thus, that Exxon properly exercised its option to purchase the subject property on that date.

Anderson subsequently filed a complaint against Hacks Crossing Partners and Exxon Corporation wherein he sought (1) an injunction against the sale of the subject property to Exxon, (2) specific performance of the July 1996 purchase agreement, and (3) other relief. The

complaint also named as defendants the Partnership's eleven general partners, including William R. Powell, Jr., in his capacity as both a general partner and the managing partner. As grounds for the relief sought, Anderson contended that Exxon's written option contract had expired on April 28, 1996, and that Powell's oral extensions of the option contract were "unlawful."

After conducting a bench trial, the trial court entered a judgment ruling in favor of the Partnership and Exxon and dismissing Anderson's complaint. In support of its ruling, the trial court noted that, in signing the July 1996 purchase agreement, Anderson understood and agreed that Exxon had a prior option on the property, that Anderson's purchase agreement was merely a "backup contract," and that Anderson had "to stand in line" behind Exxon. Accordingly, the trial court refused to enjoin the sale of the property to Exxon or to grant specific performance of the July 1996 purchase agreement to Anderson.

On appeal, Anderson has raised the following three issues for this court's review:

I.      Whether the Trial Court erred in ruling that the Anderson Contract did not provide an expiration date for the Exxon option.

II.     Whether the Trial Court erred in ruling that the Exxon option did not expire.

III.    Whether the Trial Court erred in ruling that the Anderson Contract was subject to unwritten oral extensions and/or reinstatement of the Exxon Contract.

The gist of Anderson's appeal, therefore, is his contention that the Exxon option contract expired on April 28, 1996, and that any oral agreements by Powell to extend the option period beyond April 28, 1996, were legally ineffective.

We first reject Anderson's contention that no valid option contract was in effect between Exxon and the Partnership at the time Anderson executed the purchase agreement. Where the parties to a contract agree on or assume the existence of a particular fact as the basis of their contract negotiations, "they are estopped to deny the fact as long as the contract stands, in

the absence of fraud, accident, or mistake." 31 C.J.S. *Estoppel & Waiver* § 55 (1996) (footnotes omitted) (citing *Matthews v. Matthews*, 148 S.W.2d 3 (Tenn. App. 1940), and other cases). Additionally, a party to a written contract "may be estopped to deny the truth of recitals therein, where such recitals are consistent and certain in their terms, relevant to the subject matter of the contract, and with reference to which the contract was made." 31 C.J.S. *Estoppel & Waiver* § 57 (1996) (footnotes omitted) (citing *Nashville Trust Co. v. Lebeck*, 270 S.W.2d 470 (Tenn. 1954), and other cases); *see also* 31 C.J.S. *Estoppel & Waiver* § 34 (1996) (indicating that grantee generally is estopped to deny validity of any outstanding interest to which his deed recites that conveyance to him is subject).

In the present case, the evidence was undisputed that, in entering into the purchase agreement, both Powell and Anderson agreed and assumed that a valid option contract existed between the Partnership and Exxon and that the purchase agreement was merely a backup contract to Exxon's option contract. These premises were recited in the purchase agreement, and they formed the basis of the negotiations between Powell and Anderson. Thus, we conclude that Anderson is now estopped to deny that an option contract between the Partnership and Exxon existed at the time Anderson signed the purchase agreement in July 1996.

We also reject Anderson's contention that Powell and Exxon could not enter into an oral option contract or, alternatively, that Powell could not agree orally to extend Exxon's option past April 28, 1996. We recognize that options to sell real property fall within the statute of frauds. *Texas Co. v. Aycock*, 227 S.W.2d 41, 43-44 (Tenn. 1950); *GRW Enters., Inc. v. Davis*, 797 S.W.2d 606, 612 n.6 (Tenn. App. 1990); T.C.A. § 29-2-101(a)(4) (Supp. 1995). Accordingly, the statute of frauds makes options to sell real property unenforceable through suit unless they are evidenced by a signed memorandum or other writing. *GRW Enters.*, 797 S.W.2d at 611-12. In this way, the statute seeks to protect property owners from the effects of fraud and perjury. *Id*. at 611.

The statute of frauds, however, does not render oral contracts for the sale of land void *ab initio*. *Cobble v. Langford*, 230 S.W.2d 194, 196 (Tenn. 1950); *Huffine v. McCampbell*, 257 S.W. 80, 83 (Tenn. 1923); *Bailey v. Henry*, 143 S.W. 1124, 1127 (Tenn.

1912); ***Brakefield v. Anderson***, 10 S.W. 360, 361 (Tenn. 1889); ***Trew v. Ogle***, 767 S.W.2d 662, 664 (Tenn. App. 1988). Instead, such contracts are merely voidable at the election of either party. ***Bailey***, 143 S.W. at 1127; ***Brakefield***, 10 S.W. at 361; ***Trew***, 767 S.W.2d at 664. If one of the parties to the contract fails to raise the statute of frauds as a defense, or if the parties consent, the court is required to enforce an oral contract for the sale of land. ***Cobble***, 230 S.W.2d at 196; ***Huffine***, 257 S.W. at 89; ***Bailey***, 143 S.W. at 1127; ***Brakefield***, 10 S.W. at 361-62. Moreover, a third party cannot object to enforcement of the contract by raising the statute of frauds. ***Bailey***, 143 S.W. at 1127; ***Brakefield***, 10 S.W. at 362; ***Culwell v. Culwell***, 133 S.W.2d 1009, 1012 (Tenn. App. 1939).

In accordance with the foregoing authorities, if the parties to an option contract orally agree to extend the contract's option period,[1] or if they orally agree to enter into a new option contract, a third party cannot object to enforcement of the option contract by raising the statute of frauds. We conclude, therefore, that Anderson could not prevent Exxon from exercising its option to purchase the subject property, nor could he prevent the Partnership from selling the property to Exxon, by raising the statute of frauds.[2] Only the two parties to the option contract, Exxon and the Partnership, were entitled to rely on the statute of frauds if they wished to repudiate the contract. Inasmuch as Exxon and the Partnership mutually consented to enforce the option contract, the trial court properly denied Anderson's request to enjoin the proposed sale.

Finally, we reject Anderson's contention that the Partnership, through the actions of Powell, improperly hindered the fulfillment of a condition precedent to the purchase agreement. In support of this contention, Anderson reasons that the expiration of Exxon's option contract was a condition precedent to the effectiveness of Anderson's purchase agreement.

---

[1]***See, e.g.***, ***Womble v. Walker***, 181 S.W.2d 5, 8 (Tenn. 1944); ***Hermitage House Square, L.P. v. England***, 929 S.W.2d 356, 357 (Tenn. App. 1996).

[2]We further conclude that, under the circumstances of this case, Anderson could not challenge the validity of Exxon's option contract based upon an alleged lack of consideration. ***See Tri-Star Pictures, Inc. v. Leisure Time Prods.***, 749 F. Supp. 1243, 1250 (S.D.N.Y. 1990) (noting that, where parties to contract are satisfied with their bargain, third party may not challenge contract's validity on basis of alleged insufficient consideration), ***aff'd***, 17 F.3d 38 (2d Cir.), ***cert. denied***, 513 U.S. 987 (1994); ***see also Ope Shipping, Ltd. v. Allstate Ins. Co.***, 687 F.2d 639, 643 (2d Cir. 1982), ***cert. denied***, 460 U.S. 1069 (1983).

Citing ***Kemmons Wilson, Inc. v. Allied Bank of Texas***, 836 S.W.2d 104, 110 (Tenn. App. 1992), Anderson argues that, because Powell hindered the occurrence of this condition by continuing to grant oral extensions of Exxon's option contract, the condition precedent should have been deemed fulfilled and the purchase agreement enforced.

We believe that this argument mischaracterizes the nature of the purchase agreement executed by Powell and Anderson. As previously indicated, in executing the purchase agreement, Anderson acknowledged that Exxon had a prior option contract on the subject property and that Anderson's purchase agreement was merely a "backup contract to the Exxon option contract." In our view, this provision made it clear that the Partnership's first obligation was to Exxon. The Partnership's secondary obligation to Anderson arose only in the event that Exxon failed to exercise its option. Contrary to Anderson's suggestion, the purchase agreement did not impose an affirmative duty on Powell or the Partnership to refrain from assisting Exxon in exercising its option. ***Cf. Kemmons Wilson***, 836 S.W.2d at 110 (holding that defendant banks improperly hindered fulfillment of condition precedent -- obtaining appropriate bankruptcy court approval of proposed sale -- where banks never asked bankruptcy court to approve sale to plaintiff and instead asked bankruptcy trustee to request approval of sale to third party). We know of neither a contractual provision nor a rule of law which precluded Powell from extending Exxon's option by a reasonable period in order to give Exxon time to prepare the necessary paperwork.

The trial court's order dismissing Anderson's complaint is affirmed. Costs of this appeal are taxed to Anderson, for which execution may issue if necessary.

_____
FARMER, J.

_____
CRAWFORD, P.J., W.S. (Concurs)

_____

HAYES, J. (Concurs)