IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
September 20, 2011 Session

# 2850 PARKWAY GENERAL PARTNERSHIP, v. C. DAN SCOTT, et al.

**Appeal from the Chancery Court for Sevier County**
**No. 08-9-411    Hon. Telford E. Forgety, Chancellor**

**No. E2010-02413-COA-R3-CV-FILED-JANUARY 5, 2012**

Plaintiff brought an action for declaratory judgment, asking the Court to declare that while plaintiff's sublease required it to pay the property taxes, the master lease required the lessor to pay the property taxes, and asked the Court to declare the lessor liable for the property taxes. Following trial, the Trial Court declared that the sublessee was liable for the property taxes, as it agreed to pay under the sublease. On appeal, we affirm the Judgment of the Trial Court on the grounds that under the fact of this case, plaintiff is equitably estopped to avoid paying property taxes, as agreed to in the sublease.

**Tenn.  R. App. P.3 Appeal as of Right; Judgment of the Chancery Court Affirmed.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., J., and JOHN W. MCCLARTY, J., joined.

Jack M. Tallent, II., and Kevin C. Stevens, Knoxville,  Tennessee, for the appellant, 2850 Parkway General Partnership.

Thomas M. Hale, Knoxville, Tennessee, for the appellees, C. Dan Scott and William E. Delozier.

## OPINION

Plaintiff, 2850 Parkway General Partnership, sued for Declaratory Judgment and

Damages against defendants, C. Dan Scott and William E. Delozier, as co-executors of the estate of Charles A. King and co-trustees for the King Family Trust. Plaintiff alleged that it held a leasehold interest in the Red Roof Mall Property in Sevierville (the land), was originally leased in 1969 when owners Charles A. King and wife leased it to Charles "Z" Buda. This lease is referred to as the "master lease" and expires in 2028. The lease provides that the lessor (King) will pay the property taxes, and King and Buda are now deceased. Plaintiff alleged that Buda assigned his interest in the leasehold to B&M Development Co., Inc., in 1970.

Plaintiff further alleged that B&M subsequently entered into three subleases of the property in 1981, when it leased one portion of the property to MM&M, leased a second portion back to Buda, and leased a third portion to H&W Development. In 1982, Buda leased his portion to H&W, as did MM&M, such that H&W then held a sublease on the entire tract. The property was sublet several times, the last of which was to Factory Merchants AIP IV, LP, and Factory Merchants gave a deed of trust on their leasehold to secure a mortgage held by GMAC Commercial Mortgage. All of the subleases provide that the lessees are required to pay the taxes on the property.

In 2003, the leasehold was foreclosed upon and sold to GMAC at a substitute trustees sale. Plaintiff then acquired the leasehold interest on August 13, 2004, from GMAC. Plaintiff alleged that it owned all of the improvements on the property, and that these improvements were taxed separately from the land. Plaintiff alleged that in 2003, GMAC paid the property taxes on the land, and then in 2004 through 2006, plaintiff paid the taxes on the land, as well. Plaintiff alleged that in 2007, it discovered that the master lease required the lessor to pay the property taxes, and approached defendants seeking reimbursement of the taxes it had paid. Plaintiff alleged that in 2008, the parties agreed to split the 2007 taxes and pay same under protest.

Plaintiff alleged that it constituted unjust enrichment to allow the estate to retain the benefit of plaintiff paying the taxes, and it sought a declaratory judgment that defendants were liable for the taxes, and a refund of the taxes plaintiff had paid.[1]

Defendants answered and counter-claimed, denying that the estate/trust should pay the taxes, and stated that all of the subleases required that the lessees pay the taxes. The counter-claim seeks a declaration that plaintiff should pay the property taxes and that defendants should receive a refund of the 2007 taxes paid under protest.

---

[1]A review of the exhibits attached to the Complaint demonstrates that the master lease does say the lessor will pay the taxes, but all of the subsequent subleases require the lessee to pay the taxes.

Plaintiff filed a Motion for Partial Summary Judgment, which the Trial Court denied.

The parties stipulated certain facts for trial, including the following:

1.      That 2850 holds a 2.9 acre parcel of land which was a portion of the property leased under the master lease, and that other entities hold leasehold interests in the remainder of the tract.

2.      That the master lease says the lessor will pay the real estate taxes.

3.      That the subleases say the lessees will pay the real estate taxes.

4.      That in 2003, Robbins (as managing agent for the property) contacted the Sevier County Property Assessor and asked if the Assessor would provide a separate tax bill for the 2.9 acre tract, and the Assessor agreed to do so.

5.      That in 2004 and 2005, 2850 paid the taxes on the 2.9 acre tract.

6.      That in 2006, Scott learned that the parcel had been divided for tax purposes, and had it recombined into one tract.

7.      That in 2006, the tax bill for the entire 8.3 acre tract was paid by Bayview Financial (2850's mortgage company).

8.      That in 2007, plaintiff approached defendants seeking reimbursement of the taxes for 2004-2006.

9.      That in 2008 and 2009, the parties split the tax bill and paid the taxes under protest.

10.     That in 2006, defendants filed a lawsuit captioned Scott v. King regarding the taxes.

Prior to trial, plaintiff filed a Motion in Limine seeking to preclude Delozier from testifying regarding an alleged oral agreement between King and Buda to make the lessees responsible for the property taxes.  Plaintiff asserted that the testimony was barred by the dead man's statute and the Statute of Frauds.

The Trial Court conducted an evidentiary hearing where numerous witnesses testified. At the conclusion of the evidence, the Court entered Judgment, finding that there was a modification of the master lease relating to the payment of property taxes, and found that "for

-3-

the reasons set forth in the Memorandum Opinion" the subleases amended the original master lease. The Court found that the subleases required the lessees to pay the property taxes, and that the parties agreed to have the premises assessed separately and billed to the lessees. The Court found that the sublessees had paid the taxes for many years, and that the plaintiff was responsible for the taxes on its 2.9 acre leased tract, and that it was only entitled to a partial refund for 2006 when it paid the taxes on the entire 8 acre tract.

The Court in its Memorandum Opinion, stated that there was no question that the master lease said King had the duty to pay the taxes, and that the assignment didn't address the taxes, so there was no modification at that time. The Court stated that the subleases provided that the lessees would pay the taxes, and that Buda was a party to both the original master lease and subsequent subleases, and that the subleases modified the master lease, and that Buda intended to take the tax obligation on himself and off of King. The Court found that Delozier testified that when the tax bills came to his uncle Charlie King, Delozier would deliver part of them to Buda, and the other to Johnny Walker, who was partner in H&W. The Court noted that Buda and King were neighbors and friends for many years, and Buda decided to relieve King of the tax burden, because King was only getting $7,500.00 per year in rent. The Court observed that the subtenants had always paid the taxes, and noted that the records of the Sevier County Trustee showed that other sublessees always paid the taxes and not the estate.

Further, the Court found that the parties' course of conduct showed that the lease was modified so that the lessees would be responsible for the taxes. The Court found that 2850's leasehold document put them on notice of all of the subleases, such that an element of estoppel or waiver would apply. Plaintiff then filed this appeal. The issues presented are:

I.       Whether the Trial Court erred by allowing appellees, as prime landlord, to enforce the provisions of a sublease against appellant 2850 Parkway General Partnership absent any privity?

II.      Whether the Trial Court abused its discretion and erred by finding a modification to a master lease based upon insufficient and inadmissible evidence?

         A.      Whether the Trial Court erred by finding that a party personally agreed to take on the responsibility for real property taxes based upon no actual direct evidence, in direct contradiction to evidence in the record?

         B.      Whether the Trial Court erred by relying on previously excluded evidence in determining that, because two individuals had a close

-4-

personal relationship, one likely assumed the responsibility for payment of the real property taxes in order to relieve the other of the burden?

C. Whether the Trial Court abused its discretion in admitting and relying upon testimony of nonverbal conduct which sought to prove a third party's alleged lease modification, over 2850's hearsay objection?

D. Whether the Trial Court erred in relying on inconclusive evidence of a course of conduct purporting to show appellees were not responsible for the payment of real property taxes?

III. Whether the Trial Court erred in finding an estoppel by deed?

IV. Whether the Trial Court erred in failing to allow 2850 to assert the Statute of Frauds as an intended third-party beneficiary?

First, appellant argues that defendants, representing the original landlord in the master lease, do not have standing to seek enforcement of appellant's sublease, because there is no privity of contract. We agree that the original landlord and a sublessee do not have privity of contract. *Brummitt Tire Co. v. Sinclair Refining Co.*, 75 S.W.2d 1022 (Tenn. Ct. App. 1934). However, appellees point out that they are actually third party beneficiaries of appellant's sublease, which gives them the ability to seek enforcement of the sublease. *E.O. Bailey & Co. v. Union Planters Title Guaranty Co.*, 232 S.W.2d 309 (Tenn. Ct. App. 1949).

To establish that one has standing to bring a claim, the party must show that: 1) the party has a distinct and palpable injury, 2) that there is a causal connection between said injury and the challenged conduct, and 3) that the injury is capable of being redressed by a favorable decision of the court. *ACLU v. Darnell*, 195 S.W.3d 612 (Tenn. 2006). In this case, the appellees demonstrated an injury in that they are being asked to pay annual property taxes in an amount far in excess of what they are collecting yearly in rent. This injury will only occur if the Court orders appellees to pay said property taxes, which appellees claim appellant is supposed to pay, such that there is clearly a causal connection and the opportunity for redress by the Court. Accordingly, "standing" is shown by the evidence.

More significant, however, is that appellees are defendants in a suit brought by appellant, and appellant is seeking to enforce the terms of a lease between defendants' predecessor and a third party, rather than appellant being the defendant in a suit brought by appellees to enforce appellant's sublease. Thus, standing is not an issue. As this Court has previously stated:

Courts employ the doctrine of standing to determine whether a particular litigant is entitled to have a court decide the merits of a dispute or of particular issues. *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); *Knierim v. Leatherwood*, 542 S.W.2d 806, 808 (Tenn. 1976) (holding that courts use the standing doctrine to decide whether a particular **plaintiff is "properly situated to prosecute the action**."); *City of Brentwood v. Metropolitan Bd. of Zoning Appeals, et al.*, 149 S.W.3d 49, 55 (Tenn. Ct. App. 2004), perm. app. denied (Tenn. Sept. 13, 2004). Grounded upon "concern about the proper—and properly limited—role of the courts in a democratic society," *Warth*, 422 U.S. at 498, the doctrine of standing precludes courts from adjudicating "an action **at the instance of one whose rights have not been invaded or infringed**." *Mayhew v. Wilder*, 46 S.W.3d 760, 767 (Tenn. Ct. App. 2001), perm. app. denied (Tenn. April 30, 2001).

Id. at 619-620 (emphasis added).

As we have observed, appellant, not the appellees, brought this action, seeking to rely upon a document to which appellant was not a party, and appellees are defending the claim against them. Certainly, appellees have standing to defend their position under these circumstances. Appellant takes another approach, however, arguing that appellees cannot rely upon the provisions of a sublease regarding the tax issue, when they were not a party to the same. Appellees assert that the estate/trust was a third party beneficiary, because the sublease placed the burden to pay the property taxes on appellant, thus creating a benefit for the estate/trust. In order to maintain an action as an intended beneficiary, a third party must show:

(1)     The parties to the contract have not otherwise agreed;

(2)     Recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties; and

(3)     The terms of the contract or the circumstances surrounding performance indicate that either:

(a) the performance of the promise will satisfy an obligation or discharge a duty owed by the promisee to the beneficiary; or

(b)     the promisee intends to give the beneficiary the benefit of the promised performance.

*Owner-Operator Ind. Drivers Ass'n v. Concord EFS, Inc.*, 59 S.W.3d 63 (Tenn. 2001).

-6-

In this case, the evidence does not establish that the parties to appellant's agreement to purchase the leasehold or sublease otherwise agreed that appellees would not be benefitted thereby. Recognizing appellee's right to performance of the duty to pay property taxes is appropriate to effectuate the intent of the parties to appellant's agreement to purchase the leasehold or sublease, who must be charged with knowledge that the subleases required that the lessees pay the property taxes because the deed references and incorporates all of the subleases in the chain of title. There was proof that the promisee (appellant) intended to give appellees the benefit of this performance, as Mr. Meschkanian testified that he knew that the master lease stated that the property taxes would be paid by the lessor, and then, with this knowledge, he purchased the leasehold interest and took the same subject to the subleases which require the lessees to pay the taxes.

In any event, it does not matter whether appellees are third party beneficiaries of that one particular agreement, because appellees are instead relying on a history of subleases and a course of conduct that spanned more than twenty years, a course of conduct which the Trial Court found as support for appellees' position that the master lease had been modified by King and Buda.

Appellant argues the Trial Court erred in finding there was a modification of the master lease. The Trial Court held the master lease had been modified, and in one part of its memorandum opinion refers to an "oral modification".

A written contract, including a lease, can be modified orally if there is mutual assent by both parties. *Galbreath v. Harris*, 811 S.W.2d 88 (Tenn. Ct. App. 1990). Moreover, a party's agreement to a modification may also be implied from a unambiguous course of conduct between the parties. *Id.* In this case, the evidence established that the master lease provided for an annual rent of up to $7,500.00 to be paid by Buda to King, and that King would pay the property taxes on what was, at the time of that lease, unimproved land with a low tax liability. Buda later entered into a simple assignment that assigned his interest in the lease to B & M, which was made up of himself and Ralph Masengill, Sr. Several years later, B&M entered into various subleases, one of which was to Buda himself, and those subleases contained language which placed the burden for payment of property taxes on the lessees. All of the subsequent subleases also required the lessees to pay the property taxes.

The undisputed evidence showed a course of conduct of the lessees paying the property taxes for more than twenty years. It is not disputed that when King received the property tax bills, he had his nephew, Mr. Delozier, take the property tax bills to Buda or

-7-

other lessees.[2]  The tax records showed that in certain years the bills went directly to Buda and/or Masengill.  Further, as the Trial Court found, there is clear evidence that Buda and King assented to a modification of the master lease such that the property taxes would be paid not by King, but by the lessees.

Next, appellant argues that the modification was clearly oral, as there is no express written modification of the lease, and thus the Statute of Frauds prevents enforcement of the modification.  The Statute of Frauds provides that a party cannot bring an action "[u]pon any contract for the sale of lands, tenements, or hereditaments, or the making of any lease thereof for a longer term than one (1) year . . .  unless the promise or agreement, upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person lawfully authorized by such party. In a contract for the sale of lands, tenements, or hereditaments, the party to be charged is the party against whom enforcement of the contract is sought."  Tenn. Code Ann. §29-2-101.

The parties' position cannot prevail regarding the Statute of Frauds.  As the Trial Court found, appellant is a third party to any agreement between King and Buda, and thus cannot object to enforcement of any such agreement by relying on the Statute of Frauds. *Anderson v. Hacks Crossing Partners*, 3 S.W.3d 482 (Tenn. Ct. App. 1999); *Culwell v. Culwell*, 133 S.W.2d 1009 (Tenn. Ct. App. 1939).  The Statute of Frauds does not render oral contracts void, but merely voidable at the election of **one of the parties to the contract**. *Anderson*, at 485.  We have previously stated that the purpose of the Statute of Frauds is (1) "to reduce contracts to a certainty, in order to avoid perjury on the one hand and fraud on the other," (2) to "avoid misunderstandings about the terms and nature of those contracts," and (3) to "avoid basing certain types of agreements on faulty memories ." *Smith v. Smith*, 2005 WL 3132370 (Tenn. Ct. App. Nov. 22, 2005)(citations omitted).  The purpose of the Statute of Frauds is not to allow a party to avoid agreements he or she has made, and "strict application of the Statute of Frauds can lead to evils as undesirable as those it was designed to limit or prevent." *Id*. (citations omitted).  The Statute of Frauds also "should not be used to avoid contracts or to grant a privilege to a person to refuse to perform what he has agreed to do", and neither should its enforcement render it "an instrument of hardship and oppression." *Id*. (citations omitted).

Appellant counters that it should be allowed to rely upon the Statute of Frauds because it is an intended third party beneficiary of the master lease.  Appellant cites no authority for the proposition that a third party beneficiary can assert the Statute of Frauds to try and avoid

[2] Appellants object to this testimony as nonverbal hearsay, but as the Trial Court found, this conduct does not fit the definition of nonverbal hearsay because it was not intended by the person as an assertion. Tenn. R. Evid. 801.

an oral agreement, and its argument ignores the fact that to satisfy the Statute of Frauds, one must only show that the party against whom enforcement is sought (which in this case would be Buda) evidenced his promise by a writing (i.e. the sublease) and signed the same. Tenn. Code Ann. §29-2-101. As we have previously recognized, the Statute of Frauds may be satisfied by a series of writings, and it is not necessary that the party to be charged sign each writing forming a part of the agreement where the writings on their face relate to one another. *Brandel v Moore Mortgage and Inv. Co.*, 774 S.W.2d 600 (Tenn. Ct. App. 1989).

Further, a party can be estopped from relying on the Statute of Frauds where it would be inequitable to allow him to do so. As mentioned, the courts of this State will not enforce the Statute of Frauds where it "would make it an instrument of hardship and oppression, verging on actual fraud." *Thornton v. Marcum*, 2008 WL 836368 (Tenn. Ct. App. Feb. 13, 2008). In this case, appellant acquired a leasehold interest and the document transferring said interest references all of the subleases in the chain of title, which require the lessees to pay the property taxes. Appellant did, in fact, pay those taxes for the first three years with no complaint. To impose this tax liability on the estate/trust would be unjust and would create a financial hardship on the estate/trust, who is not receiving an annual rental equal to the amount of the property taxes, while appellant has the use and benefit of this now quite valuable property. To invoke the Statute of Frauds in this situation would truly be oppressive and borderline fraudulent.

The determinative issue on this appeal is the issues raised by the Trial Court, holding the appellant was estopped to deny that it should pay the property taxes as required by its sublease. As we have previously recognized, equitable estoppel can be applied "where the parties to a contract agree on or assume the existence of a particular fact as the basis of their contract negotiations". Those parties will be "estopped to deny that fact as long as the contract stands, in the absence of fraud, accident, or mistake". *Anderson v. Hacks Crossing Partners*, 3 S.W.3d 482 (Tenn. Ct. App. 1999). Moreover, a party to a written contract "may be estopped to deny the truth of recitals therein, where such recitals are consistent and certain in their terms, relevant to the subject matter of the contract, and with reference to which the contract was made." *Id.* We have recognized that where a party who entered into a purchase agreement knew that there was a valid option contract which might take precedence over said purchase agreement, that party could not later deny that a valid option contract existed. *Id.*

In this case, appellant acquired its leasehold interest with knowledge that the subleases required it to pay the property taxes, and appellant agreed to and assumed the obligation to pay the property taxes pursuant to its sublease and did, in fact, pay those taxes for three years without objection. Appellant had knowledge of the amount of the property taxes through its agent, Mr. Robbins, prior to entering into the contract, and took on this obligation voluntarily as part of the contract to purchase the leasehold interest. Appellant cannot now claim fraud,

accident, or mistake, since Mr. Meschkanian testified that he was aware of the provision in the master lease requiring lessor to pay the property taxes, but entered into the sublease (with the language requiring the lessee to pay the taxes) anyway.

We affirm the Trial Court's holding that appellant is estopped from denying that it is liable for the property taxes under the sublease agreement.

The Judgement of the Trial Court is affirmed, and the costs of the appeal are taxed to 2850 Parkway General Partnership.

_____
HERSCHEL PICKENS FRANKS, P.J.