Green, J.
delivered the opinion of the court.
In this case two questions are presented. 1. Whether, upon the promise to pay the debt of another, the consideration for such promise not being in writing, this action can he maintained? 2. Whether, in a guaranty of this kind, demand and notice are necessary, before the guarantor can he charged?
The first question depends upon a proper construction of the statute of frauds, 1801, ch. 25, sec. 1. The first section of this act provides, “that no action shall be brought whereby to charge any executor or administrator upon any special promise, to answer any debt e?-damage out of his own estate; or whereby to charge any defendant upon any special promise, to answer for the debt, default, or miscarriage of another person; or to charge any person upon any agreement made upon a consideration of marriage; or upon any contract for the sale of lands, tenements or hereditaments, or the making any lease thereof, for a longer term than one year; or upon any agreement which is not to be performed within the space of one year from the making thereof, unless the promise or agreement, upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or by some other person by him thereto lawfully authorized.”
It appears to me, that the legislature manifestly intended to make a distinction between the words “promise” and “agreement.” These words are both used *332 in the former part of the section, but are used in re*' latí on to undertakings of a different character; and when they occur again in the latter part of the section, they have reference to their several use antecedently, and are intended to be applied to the description of undertakings in relation to which they were first used. Thus, the promise whereby an executor or administrator undertakes to pay out of his own estate, or whereby one undertakes to pay the debt of another, must be in writing. So an agreement made in consideration of marriage, or upon a contract for the sale of lands, or for a lease for more than a year, or that is not to be performed within a year, must be in writing. As the legislature have used the words promise and agreement, in relation to distinct descriptions of undertakings, and have kept up that distinction throughout the whole section, we are bound to conclude that they did so by design, and with the understanding that the words had a different meaning; and using them with this view they intended a different idea should be conveyed by them.
This construction of the meaning of the legislature^ as evinced by the manner in which they have used these words, and the distinction they have kept up be-tweenlhem throughout the section, is in accordance with their legal signification, as they are used in all the books.
The word “agreement,” includes in its signification, a consideration which is an integral part of it. The word “promise” is not used in so extended a sense; it does not include the idea of a consideration; but when it is coupled with one, then it becomes an agreement; a promise and a consideration, therefore, constitute an agreement. Wain vs Wartlers, 5 East, 10. Sears vs Brink, 3 John. Rep. 214. Violet vs Patton, 5 Cranch, 153.
Upon this construction of the statute, it is not necessary (where the promise to pay the debt of another is *333 m writing) that the consideration of the promise should . , , . , . also he stated m writing, m order to maintain an action. By the common law, the promise and the consideration hoth might have been proved by parol. By the act of 1801, ch. 25, the common law is changed, but it is changed no further than the legislature has expressly declared; that declaration extends only to the promise; consequently the consideration may be proved as at common law.
The reason why, in England and New York, the courts hold that a written engagement to pay the debt of another will not he binding, unless the consideration is also stated in writing, is because in the statute 29 Car. II, and in the New York act on this subject, the word “agreement” alone is used, which, as has been stated, includes a consideration; it follows that the whole must be in writing. But the supreme court of Massachusetts held, in the case of Packard vs Richardson, (17 Mass. Rep. 122,) that under their statute of frauds, which is like the New York and British acts, it was not necessary to state the consideration in writing; the whole court agreeing in an able opinion delivered by Chief Justice Parker, that the technical, legal meaning of the word agreement, ought to he rejected, and that it ought to be construed according to the sense in which it is used in common parlance. If a doubt could exist upon the construction of the Massachusetts act, whether the consideration must be stated in writing, it would go strongly to clear away all doubt, that a like construction of our act, where the words promise or agreement are used, ought to prevail.
The supreme court of the United States, in the case Violetvs Patton, (5 Cranch, 153,) in giving a construction to the Virginia act, which is like ours, take the distinction between a promise and an agreement, and determine, that under the Virginia statute, it is not necessary, in order to maintain an action, that the consul? *334 eration should be stated in writing. Such would also have been the decision of the court of the King’s Bench, in the case of Wain vs Wartlers, had the statute 29 Car. II, contained, as ours does, in the concluding part of the section, the word promise. Justices Lawrence and Le Blanc, saj, that would have been their opinion, and all the judges take the distinction between the words promise and agreement. Chancellor Kent, in his commentaries, (3 vol. 86,) in reviewing the English and American cases upon this subject, recognizes the distinction in the construction of those statutes, which have the word' promise as well as agreement, in the latter part of the clause, from those in which the word “agreement” alone is used.
It is insisted in argument, that if this construction prevail, all the evils which the statute intended to prevent, would be let in; that a recovery cannot be had upon a promise alone; and that if proof of the consideration may be by parol, there would be no security from frauds and perjuries, by having the promise in writing. The first answer to this is, that the court cannot, upon the supposition of such a state of things, go further than the legislature have gone; it can only carry into effect the legislative enactment. But the argument assumes too much; the danger of perjury in proving a parol promise, the great liability to put a misconstruction on the words used, and a disposition on the part of the legislature to protect men from hasty and inconsiderate engagements, where they receive no beneficial consideration, were the reasons which seem to have influenced the passage of the act of 1801, ch. 25. To require the promise' to be in writing, removes these mischiefs; the .act is more deliberate; instead of depending on proof of loose expressions, inaccurately remembered, and often misreported, under the influence of a bias on the mind of the witness, or *335 corruption in his heart, the proof, by the statute, is made certain.
These mischiefs do not exist, so far as regards the consideration; the proof of it scarcely ever depends upon the declarations of the party to he charged, but upon facts capable of being controverted and disproved if false. There is therefore no necessity why we should strain the meaning of the word “promise” beyond its legitimate signification, in order to make it include the “consideration” in its meaning.
As to the second point, we are of opinion, that in an undertaking of this kind, no demand of the drawer and notice pf non-payment to the guarantor, is necessary. This is a direct undertaking on the part of the defendants as securities for the payment of the note, by the 25th December, 1824. They say, “we bind ourselves to see the within note paid.” This is an absolute promise, and means that they will pay it if the maker does not. We recognize the principles decided in Allen vs Rightmere, 20 John. Rep. 366.
Whyte, J. dissented upon the first point.
Judgment affirmed.