Cobble *et al. v.* Langford.

(*Nashville,* December Term, 1949.)

Opinion filed April 29, 1950.

386

Whᴵᴛᴇ & Whᴵᴛᴇ, of Livingston, for appellants.

J. A. Oᴀᴋʟᴇʏ of Livingston, and A. H. Rᴏʙᴇʀᴛs, Jʀ., of Nashville, for appellee.

MR. JUSTICE BURNETT delivered the opinion of the Court.

The bill in this cause was filed by the Cobbles against the sister of Mrs. Cobble, Edna Langford, to enjoin the prosecution of an ejectment case in the Circuit Court of Overton County involving the title and possession of a tract of land in that County. After the bill was filed the complainants confessed judgment in the ejectment case. Proof was heard and the Chancellor dismissed the suit because in his opinion the memorandums of the sale of land by Edna Langford to the Cobbles were not sufficient to satisfy the statute of frauds. The Chancellor also rendered judgment against Edna Langford for the purchase price of the land as paid to her agent and received by her from the Cobbles. The Court of Appeals affirmed the decree of the Chancellor. A petition for certiorari has been filed, granted and argument has been heard.

The petitioners allege and prove that they purchased a tract of land from Edna Langford on a parol contract and as a result of this purchase went into possession of and lived on this land from 1939 until the time this suit was instituted in 1946. They further allege and prove and base their claim for the injunction, to enjoin the ejectment suit, on memorandums signed by the parol vendor, Edna Langford, and by her agent. The question

is whether or not these written agreements can be tied together and when tied together whether they are sufficient to bring this original parol sale within the terms of the statute of frauds so as to satisfy the statute.

The statute of frauds is carried in the present Code under Section 7831 and contains the following provision with regard to the sales of land: "No action shall be brought: Whereby to charge . . . any person . . . upon any contract for the sale of lands, tenements, or hereditaments, . . . unless the promise or agreement, upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person by him thereunto lawfully authorized."

Under the proof in this record the Cobbles went into possession of the land in question in 1939. Some years thereafter Edna Langford sold this property to one Smith by warranty deed which was duly recorded. After the recordation of this deed suit was brought by the Cobbles against Smith and it was held in that suit that the deed therein was champertous. Immediately after this holding, Edna Langford signed a memorandum to the Cobbles as follows:

"Jim Cobble and wife Martha Cobble: You and each of you are hereby notified and this is to make known that any Agreement or Understanding I may have had with you, or either of you, about the Conveyance of a tract of land described as follows:

" 'Lying and being in the Third Civil District of Overton County, bounded on the north by Dale and Smith; on the west by Dora Hawkins and George Copeland; on the south by Geraldine Ayers and on the east by Loa Ayers, containing Ninety-four (94) Acres more or less.'

"That I have no intention of executing to you a deed to the above land described and set out and that whatever understanding may have been between us with respect thereto is hereby disaffirmed and you each of you are hereby required to at once surrender and turn possession to me off said above described boundary of land.

"This April 18th, 1946.

"Edna Langford."

It is also shown by the overwhelming preponderance of the evidence, and this fact is inescapable after one reads the record, that Edna Langford appointed her sister Lula A. Brown as her agent to collect for the sale of this land and authorized her to sign receipts for the purchase money as paid. The record contains a receipt for the payment or part payment of this land signed by Lula Brown, setting forth the terms of the purchase. This receipt is as follows:

"We have bought this farm we now live on from Edna Langford bounded on the north by Dale and Smith and on the West by Dora Hawkins and George Copeland and on the south by Geraldine Ayers and on the east by Lola Ayers; We are to pay $250.00 two hundred and fifty dollars for this land, all to be paid to Lula Brown in payment as we can pay it.

"I have this day received $100 Dollars cash in hand from Jim and Martha Cobble as first on a home land. This 12th of November 1941.

"My sister, Edna Langford, authorized me to sign these receipts.

"Lula A. Brown."

Can these two writings, signed by the party to be charged and her agent, be tied together so as to satisfy the statute of frauds? It is not what the parties agreed

to in their oral contract, but whether the contents of these memorandums, signed by Edna Langford and her agent, satisfy the requirement of the statute of frauds.

It is not that the parol agreement is and of itself void, but becomes unenforceable when the statute of frauds is pleaded. *Brakefield* v. *Anderson*, 87 Tenn. 206, 208, 209, 10 S. W. 360; *Bailey* v. *Henry*, 125 Tenn. 390, 400, 401, 143 S. W. 1124.

This Court has held that it is immaterial, "as to the number of papers which, connected together, make out the memorandum . . ." *Hudson* v. *King*, 49 Tenn. 560, 573. In this case, *Hudson* v. *King*, the Court holds that the memorandum may be executed after the transaction. The Court says: "It may be executed any time after the contract and before the action. It is doubted whether it might not be after the action brought, because the statute only means to secure written evidence of the contract."

The statute of frauds was not enacted for the purpose of permitting a person to avoid a contract. Its object was not to grant a privilege to a person to refuse to perform what he has agreed to do. It was not enacted as a shield to the dishonest, though it is sometimes used as such, but that was not its purpose. It was enacted to prevent fraud and perjury. Its purpose really was to prevent the mischief arising from resorting to oral evidence to prove the existence and terms of an alleged verbal agreement in certain cases as specified under the statute, among which are sales of real estate. The purpose of the statute is well set forth by Lord Hardwicke in an English case, *Welford* v. *Beasley*, 3 Atk. 503 wherein it was said: "The meaning of the statute is to reduce contracts to a certainty, in order to avoid perjury

on the one hand and fraud on the other, and, therefore, both in this court and in the courts of the common law, where an agreement has been reduced to such a certainty, and the substance of the statute has been complied with in the material part, the forms have never been insisted upon.''

In *Huffine* v. *McCampbell*, 149 Tenn. 47, 78, 257 S. W. 80, 89, this Court said:

''The statute of frauds is, after all, merely a statute declaring that a certain kind of evidence is required to support an action in certain cases. If the statute be not pleaded, a parol contract can be enforced. The distinction between the contract itself and the memorandum, which is merely the evidence thereof, is clearly shown in *Lee* v. *Cherry*, 85 Tenn. 707, at page 708, 4 S. W. at page 835, 4 Am. St. Rep. 800, where the court says:

'' 'It is not essential that the contract of sale shall be in writing, provided there is produced a writing containing the terms of the oral contract, and authenticated by the signature of the party to be charged.' ''

In *Huffine* v. *McCampbell, supra*, the Court clearly sets out the reasons why an expressed repudiation of a contract may be sufficient to bring the parol agreement within the statute. The Court of a repudiation said: ''His letter would stand as a written admission that such a contract was made; and his declaration that he intended to repudiate the contract thus made could neither add to nor subtract from the evidentiary value of the letter. To take a contrary view is, as it seems to us, to confound the contract itself with a memorandum required by the statute of frauds.''

In the instant case the record clearly shows that the Cobbles went into possession of this property some years

prior to the repudiation above copied. The overwhelming weight of the proof shows that a verbal contract for the land as particularly described in this repudiation was made. The memorandum as signed by the agent of Edna Langford sufficiently and definitely shows that the terms of this contract were $250 to be paid as these parties could pay it. The proof overwhelmingly shows that Lula Brown was the agent of Edna Langford. It is true that Edna Langford attempts to deny this agency, but there is an abundance of testimony that she authorized Lula Brown, her sister, to do these things. There is the fact, too, that when this money was collected by Lula Brown from the Cobbles she turned this over to the vendor, Edna Langford, and that then, after Edna Langford determined to repudiate her trade Edna Langford attempted to return this money but it was sent back to her and she kept it. The Chancellor gave judgment against her for this money. We feel unquestionably that had the Chancellor and the Court of Appeals been satisfied that these two memorandums were a sufficient writing to bring the matter within the statute of frauds then that they would have sustained the bill of the Cobbles.

Another question arises in our minds, that is, whether or not the agency of the agent, Lula Brown, can be established by parol evidence or must her agency be shown by writing signed by the party to be charged, Edna Langford. This Court has repeatedly held, as have all other cases that we have been able to find, that the authority of the agent who signed the writing is not required by the statute to be in writing. *Johnson* v. *Somers*, 20 Tenn. 268; *Farris & Hampton* v. *Martin*, 29 Tenn. 495; *Matherson* v. *Davis*, 42 Tenn. 443.

In other words, the theory of the establishment of this agency is the same as the theory of establishment of any other agency. The burden of proof being on the person attempting to establish the agency that the agent was the agent of the party and was authorized to do the acts done. As heretofore said, the overwhelming proof in this record shows that his agent had the authority that she exercised in the instant case.

We in this State are definitely aliened with the minority holdings that part performance does not take the case out of the statute. 101 A. L. R. 947, 948.

The memorandum signed by the party to be charged does not contain the consideration to be paid. Is this necessary to bring the promise within the Statute?

This question was answered in the negative by this Court long ago. In *Taylor & Williams* v. *Ross*, 11 Tenn. 330, Green, J., speaking for the Court said: "Upon this construction of the statute, it is not necessary (where the promise to pay the debt of another is in writing) that the consideration of the promise should also be stated in writing, in order to maintain an action."

The reasons why this conclusion was reached are fully set forth in the opinion preceeding the quoted statement. They are sound and equally applicable here. This Court has followed the above holding in *Campbell* v. *Findley*, 22 Tenn. 330; *Gilman* v. *Kibler*, 24 Tenn. 19, wherein it is said that the consideration "may be proved aliunde". *State* v. *Humphreys*, 29 Tenn. 439, and *Whitby* v. *Whitby*, 36 Tenn. 473, when it is said: "We think it clear that the consideration is not to be regarded, in construing the statute, as part of the contract, but merely as inducement to it. And therefore no principle of the law is violated by the admission of parol evi-

dence of the consideration, whenever it becomes necessary to be shown.''

For the reasons heretofore stated, we feel that the memorandum as copied herein is a sufficient memorandum to satisfy the statute of frauds. The result is that the decree of the Court of Appeals must be reversed and the case remanded to the Chancery Court for action there consistent with this opinion.

All concur.