IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
May 8, 2001 Session

## J. HOWARD GREGG v. JACK JOHNSON

## Appeal from the Chancery Court for Bradley County
No. 99-118      Jerri S. Bryant, Chancellor
FILED AUGUST 13, 2001

## No. E2000-02685-COA-R3-CV

J. Howard Gregg ("Plaintiff"), sued his former business partner, Jack Johnson ("Defendant"), essentially alleging that Defendant breached an agreement to pay a debt originally incurred by their former partnership, Jack Johnson Motors. Plaintiff also alleged that Defendant owed him money as part of their partnership ("Partnership") dissolution agreement. Neither the Partnership agreement nor the dissolution agreement was written. Defendant raises as defenses the statute of limitations and the Statute of Frauds. The Trial Court held in favor of Plaintiff. Defendant appeals. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed.**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, J., and CHARLES D. SUSANO, JR., J., joined.

Ashley L. Ownby, Cleveland, Tennessee, for the Appellant, Jack Johnson.

Roger E. Jenne, Cleveland, Tennessee, for the Appellee, J. Howard Gregg.

### OPINION

### Background

In February 1983, Plaintiff and Defendant entered into the Partnership to buy and sell vehicles under the name of Jack Johnson Motors. The Partnership agreement was unwritten.

Defendant had been in the used car sales business since approximately 1963. Plaintiff had been in business for himself in other areas for quite some time.

The parties stipulated that Plaintiff obtained a line of credit in his name from Merchant's Bank ("Line of Credit") when they formed the Partnership in February 1983. Plaintiff testified he obtained the Line of Credit because he had better credit and Defendant did not have the money. The parties stipulated at trial that they used the Line of Credit to purchase vehicles for the Partnership and that Partnership funds were used to make the payments toward this debt. In addition, the proof contained in the record shows that the Partnership's 1987 Balance Sheet ("Balance Sheet") lists the Line of Credit as a "Long Term Liabilit[y]" of the Partnership. The record also contains the Partnership's Ledger Sheet ("Ledger Sheet") which lists the Line of Credit with a beginning balance of $425,000; the amount of payments made toward the Line of Credit from 1987 through December 1989; and the ending balance in 1989 of $150,000. Moreover, the parties stipulated that Defendant and/or the Partnership claimed as a deduction for federal income tax purposes the interest paid on the Line of Credit. Defendant, however, disputes that this was a Partnership debt and points to the fact that the Line of Credit was in Plaintiff's name.

The parties operated the Partnership from 1983 until 1989 when they agreed to a dissolution of the Partnership. The parties agreed that Plaintiff's portion of the Partnership assets totaled approximately $150,000. Plaintiff was given $50,000 in inventory and $50,000 in cash, with the remaining $50,000 ("Dissolution Debt") to be paid by Defendant over time. As in the case of the parties' Partnership agreement, their dissolution agreement was not written.

At this point, the parties' versions of the facts differ sharply. Plaintiff claims that Defendant agreed to pay the remaining $150,000 balance owed on the Line of Credit *and* after the Line of Credit was paid entirely, Defendant then was to pay Plaintiff the outstanding $50,000 Dissolution Debt. By contrast, Defendant does not dispute that he owed Plaintiff the $50,000 Dissolution Debt, but he claims that his payments on the Line of Credit debt were credited to the $50,000 Dissolution Debt. Defendant disputes Plaintiff's contention that he agreed to pay the Line of Credit *and* then the Dissolution Debt. The parties, however, did stipulate at trial that Defendant continued to make payments toward the Line of Credit debt from the date of dissolution in December 1989, until October 1992.

In October 1992, the successor to Merchants Bank, SunTrust Bank, requested that Plaintiff liquidate the Line of Credit debt. Plaintiff then obtained an installment loan from another lender ("Installment Loan"), to pay in full the Line of Credit debt of approximately $117,040.[1] Around the time that the Installment Loan was obtained, in an apparent bank error, a personal loan to Plaintiff in the amount of $20,000 was placed on the Line of Credit. According to Plaintiff, the parties discussed this issue and agreed that the Dissolution Debt of $50,000 would be off-set by $20,000 to total $30,000 with Defendant to pay the remaining Line of Credit debt which now

---

[1] For simplicity's sake, we use round numbers throughout this opinion.

included Plaintiff's $20,000 personal loan. At trial, Plaintiff testified that the Installment Loan debt was not to be paid within a year but rather was to be paid over time.

From November 1992 through May 1996, Defendant made the monthly payments of $2,200 on the Installment Loan by giving a check to Plaintiff who, in turn, endorsed the check to make the Installment Loan payment. As in the case of the Line of Credit debt, Defendant claimed as a deduction on his federal income tax the interest he paid on the Installment Loan. Defendant testified that after May 1996, he stopped making payments on the Installment Loan because he believed that he had paid enough toward the Dissolution Debt owed to Plaintiff. Plaintiff, on the other hand, testified that Defendant expressly acknowledged that he owed the debt on the Installment Loan but that he was having financial difficulties. Although not contained in their stipulations, it is not disputed that after May 1996, Defendant made three more payments on the Installment Loan.[2] The Trial Court found that Defendant made his last payment on the Installment Loan in April 1998. Thereafter, in May 1998, Plaintiff paid off the Installment Loan balance of $47,890.

On April 29, 1999, Plaintiff filed his Complaint, alleging that Defendant owed him $30,000 on the Dissolution Debt plus the $47,890 Plaintiff paid on the Installment Loan. In his Answer, with respect to the Dissolution Debt, Defendant raised the defense of statute of limitations. Defendant also alleged in his Answer that any agreement that he made with Plaintiff to pay the Line of Credit and Installment Loan (collectively "Partnership Debts") violates the Statute of Frauds and is, therefore, unenforceable.

After a bench trial, the Trial Court awarded judgment to Plaintiff in the amount of $87,860, which included money owed for the Dissolution Debt and the Installment Loan debt, plus pre-judgment interest. Defendant then filed a post-trial Motion to Make Additional Findings of Fact, to Alter or Amend the Judgment, and to Stay Execution of the Judgment. Thereafter, the Trial Court made additional findings of fact which included the following:

> 1) After the parties' dissolution, Jack Johnson Motors continued to make all of the payments on the Line of Credit because the money had been used for the Partnership;
>
> 2) Defendant continued to claim the Line of Credit's interest payments as a deduction on his federal income tax return;
>
> 3) After the Line of Credit was converted to an Installment Loan, from November 1992 through May 1996, Defendant paid the monthly payment of $2,200 "in accordance with the parties [sic] agreement";

---

[2] Plaintiff testified at trial that Defendant made three payments on the Installment Loan after May 1996, while Defendant testified that Plaintiff asked him for money for various reasons, not including the Installment Loan. Defendant testified that he gave Plaintiff approximately $4,500. In his brief, however, Defendant stated that he made payments on the Installment Loan after May 1996, consistent with Plaintiff's trial testimony.

4) After May 1996, Defendant made three more payments on the Installment Loan totaling $4,500, and the last payment was made on April 16, 1998; and

5) The Line of Credit belonged to the Partnership and was therefore, "the Defendant's debt, as well as the Plaintiff's debt."

The Trial Court also held that the parties' agreement that Defendant would pay the Line of Credit was not within the Statute of Frauds because the debt was a Partnership debt and "not a promise to pay the debt of another." The Trial Court further held that even if the Statute of Frauds was applicable, Defendant was estopped from relying on the Statute because he tendered partial performance of his duty under the parties' agreement. An Agreed Order granting Defendant's motion to stay was entered. Defendant appeals. We affirm.

## Discussion

On appeal and although not stated exactly as such, Defendant raises the following issues: 1) Plaintiff's claim regarding the Dissolution Debt of $30,000 is barred by the applicable statute of limitations of six years; 2) Plaintiff's claim regarding the Partnership Debts violates the Statute of Frauds; 3) the doctrine of partial performance does not apply to this situation so as to take the parties' agreement regarding the Partnership Debts out of the Statute of Frauds; and 4) the Trial Court erred in holding Defendant liable for the balance of the Installment Loan because it was not a debt of the Partnership. Plaintiff raises no additional issues on appeal.

Our review is *de novo* upon the record, accompanied by a presumption of correctness of the findings of fact of the Trial Court, unless the preponderance of the evidence is otherwise. Tenn. Rule App. P. 13(d); *Alexander v. Inman,* 974 S.W.2d 689, 692 (Tenn. 1998). A Trial Court's conclusions of law are subject to a *de novo* review with no presumption of correctness. *Ganzevoort v. Russell,* 949 S.W.2d 293, 296 (Tenn. 1997).

We first address Defendant's argument regarding the Dissolution Debt of $30,000. Defendant contends that Plaintiff's claim against him regarding the Dissolution Debt is barred by the applicable statute of limitations. Defendant contends that the applicable statute of limitations period is six years under Tenn. Code Ann. § 28-3-109(a)(3).[3] Defendant argues that the parties did not set a date that the Dissolution Debt was due, and as a result, the limitations period accrued at the time the promise was made. *See* 51 Am.Jur.2d *Limitations of Actions* § 164 (2000) (stating that in

---

[3] Tenn. Code Ann. § 28-3-109(a) provides, in pertinent part:

The following actions shall be commenced within six (6) years after the cause of action accrued:

(3) Actions on contracts not otherwise expressly provided for.

an oral agreement to pay money, where no date for payment was set, the statute of limitations may begin to run at the time that the promise is made).

Although we agree that the applicable limitations period is six years, we disagree, as did the Trial Court, that the parties did not set a time that the Dissolution Debt was due. It is apparent from the Trial Court's Judgment in favor of Plaintiff and its rejection of this defense that it found Plaintiff to be more credible than Defendant. The substance of the parties' oral dissolution agreement is provided by their testimony. Plaintiff testified that at the time of the parties' dissolution in 1989, they agreed that Defendant first would pay the Line of Credit debt and then pay Plaintiff the $50,000 Dissolution Debt. Defendant's testimony directly conflicts with Plaintiff's account of the parties' agreement.

"Unlike this Court, the [T]rial [C]ourt observed the manner and demeanor of the witnesses and was in the best position to evaluate their credibility." *Union Planters Nat'l Bank v. Island Mgmt. Auth., Inc.*, 43 S.W.3d 498, 502 (Tenn. Ct. App. 2000). The Trial Court's determinations regarding credibility are accorded deference by this Court. *Id.*; *Davis v. Liberty Mutual Ins. Co.*, 38 S.W.3d 560, 563 (Tenn. 2001). "'[A]ppellate courts will not re-evaluate a trial judge's assessment of witness credibility absent clear and convincing evidence to the contrary.'" *Wells v. Tennessee Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999).

The evidence does not preponderate against the Trial Court's finding that Plaintiff's version of the dissolution agreement is the more credible, and, therefore, the Dissolution Debt was not due until Defendant completely paid the Partnership Debts. The statute of limitations never was triggered since Defendant never completely paid the Partnership Debts. Accordingly, we hold that the Trial Court did not err in finding that the statute of limitations had not expired for Plaintiff's claim regarding the Dissolution Debt.

We now address Defendant's arguments related to the Partnership Debts. Defendant contends that any oral agreement by him to pay the Partnership Debts is unenforceable under the Statute of Frauds. The Statute of Frauds provides, in pertinent part, the following:

(a) No action shall be brought: . . .

(2) To charge the defendant upon any special promise to answer for the debt, default, or miscarriage of another person;

(5) Upon any agreement or contract which is not to be performed within the space of one (1) year from the making of the agreement or contract;

unless the promise or agreement, upon which such action shall be brought, or some memorandum or note thereof, shall be in writing,

and signed by the party to be charged therewith, or some other personal lawfully authorized by such party.

Tenn. Code Ann. § 29-2-101.

The Statute of Frauds requires written evidence of certain types of contracts before those contracts can be found enforceable. *GRW Enter., Inc. v. Davis*, 797 S.W.2d 606, 611 (Tenn. Ct. App. 1990). This Court, in examining the intent behind the Statute of Frauds has held:

> Its purpose is to prevent frauds based upon oral testimony and to deter the formation of contracts based upon loose statements or innuendoes long after witnesses have become unavailable or when memories of the precise agreement have been dimmed by the passage of time.

*Price v. Mercury Supply Co., Inc.*, 682 S.W.2d 924, 932 (Tenn. Ct. App. 1984). The application, however, of the Statute of Frauds is not without limits, and courts should not allow a person to use the Statute "to avoid contracts or to 'grant a privilege to a person to refuse to perform what he has agreed to do.'" *GRW Enter., Inc. v. Davis*, 797 S.W.2d at 611 (quoting *Cobble v. Langford*, 230 S.W.2d 194, 196 (Tenn. 1950)); *see also Jarrett v. Epperly*, 896 F.2d 1013, 1018 (6th Cir. 1990) (holding that "under Tennessee law, a wrongdoer is not permitted to rely on the Statute of Frauds defense").

Defendant contends that any agreement he made to pay the Partnership Debts is unenforceable because it violates the Statute of Frauds since it is a promise to pay the debt of another person. *See* Tenn. Code Ann. § 29-2-101(2). The Trial Court found this agreement to be outside of the Statute of Frauds because the Line of Credit debt was the Partnership's and, therefore, the debt of Defendant and Plaintiff. Although Defendant argues that any agreement he made to pay the Line of Credit and the Installment Loan violates the Statute, Defendant's argument primarily involves the Installment Loan. Defendant argues that the Trial Court's findings did not address the Installment Loan taken out by Plaintiff in 1992. Defendant also argues that the Line of Credit was paid in full when Plaintiff obtained the Installment Loan and also that the Installment Loan is actually a separate debt from the Line of Credit, and , therefore, not a Partnership debt. Moreover, Defendant points to Plaintiff's testimony that he listed the Installment Loan on his financial statement as a debt.

After careful consideration of the facts and circumstances contained in the record, we hold that the evidence does not preponderate against the Trial Court's determination that the Line of Credit is a Partnership debt. We find no error in the Trial Court's holding that Defendant is liable for the amount paid by Plaintiff on the Installment Loan. *See Ganzevoort v. Russell,* 949 S.W.2d at 296; Tenn. Rule App. P. 13(d); *Alexander v. Inman,* 974 S.W.2d at 692. The parties stipulated that in February 1983, when the parties entered their Partnership agreement, Plaintiff obtained a Line of Credit. It is not disputed that the proceeds from the Line of Credit were to be and were used in

the operation of the Partnership's business, Jack Johnson Motors, and to purchase inventory for the Partnership. *See* Tenn. Code Ann. § 61-1-107(a) – (b). The parties' stipulations included that while they were partners, Jack Johnson Motors made all payments on the Line of Credit and that after the dissolution of the Partnership in 1989, Defendant continued to make payments on the Line of Credit. Further, the record shows that the Partnership's Balance Sheet and Ledger Sheet both referred to the Line of Credit as its liability. Moreover, the parties stipulated that Defendant and/or Jack Johnson Motors claimed the interest paid on both the Line of Credit and the Installment Loan for federal income tax purposes.

In addition, the proof in the record shows that in 1992, the Line of Credit was paid off with the proceeds of the Installment Loan only at the request of the successor of Merchant's Bank, SunTrust. As found by the Trial Court, and as stipulated by the parties, when the Line of Credit was converted to the Installment Loan, Defendant continued to make regular monthly payments toward the debt until 1996. Plaintiff testified that thereafter, Defendant made three more payments on the Installment Loan until 1998, and the Trial Court incorporated this into its findings of fact.

Since the Trial Court found Defendant liable for the balance on the Installment Loan, it clearly treated the Line of Credit debt and the Installment Loan as the same debt belonging to the Partnership. Likewise, Defendant treated this debt as the same obligation as well since Defendant continued making regular payments for four years after the debt was converted. Accordingly, we hold that the evidence does not preponderate against the Trial Court's finding that the Line of Credit debt was a Partnership debt. Tenn. Rule App. P. 13(d); *Alexander v. Inman,* 974 S.W.2d at 692. We find no error in the Trial Court's determination that the parties' agreement that Defendant would pay the Line of Credit debt was not an agreement to pay the debt of another, and, therefore, does not fall within the Statute of Frauds. *See* Tenn. Code Ann. 29-2-101(a)(2); *Ganzevoort v. Russell,* 949 S.W.2d at 296.

Defendant also argues on appeal that any agreement he made with Plaintiff to pay the Installment Loan violates the Statute of Frauds because it was not to be performed within one year. *See* Tenn. Code Ann. § 29-2-101(5).[4] We disagree. This Court has held that this particular provision of the Statute of Frauds is "generally construed very narrowly by the courts . . . because courts generally attempt to give effect to contracts rather than defeating them." *Price v. Mercury Supply Co., Inc.*, 682 S.W.2d at 932. In interpreting this particular provision of the Statute, this Court held:

> "The question is not what the probable, expected, or actual performance of the contract may be, but whether, according to the reasonable interpretation of its terms, it requires that it should not be performed within the year. Unless the court, looking at the contract in view of the surroundings, can say

---

[4] At the trial level, it does not appear from the record that Defendant specifically raised this particular defense, found at Tenn. Code Ann. § 29-2-101(5), but did raise the general defense of Statute of Frauds in his Answer and at trial.

that in no reasonable probability can such agreement be performed within the year, it is its duty to uphold the contract.

\* \* \* \* \* \* \* \*

[I]f a contract, when made, was in reality capable of full and bona fide performance with [sic] the year, it is to be considered as not within the statute."

*Id.* (quoting *Boutwell v. Lewis Bros. Lumber Co.*, 182 S.W.2d 1, 3 (Tenn. Ct. App. 1944); *Anderson-Gregory Co. v. Lea*, 370 S.W.2d 934, 936 (Tenn. Ct. App. 1963)).

In this case, the proof in the record does not show that both debts were not capable of being paid in full within one year. Stated conversely, it was possible for the debts to be paid within one year. We acknowledge Plaintiff's testimony that the Line of Credit debt was to be paid back over time, instead of one year. The proof in the record does not show, however, that there was no "'reasonable probability . . .'" that this agreement could not be performed within one year. *Id.* (quoting *Boutwell v. Lewis Bros. Lumber Co.*, 182 S.W.2d at 3). There is no proof in the record on appeal that the lenders would have refused full payment within the first year after the parties' agreement. Accordingly, we hold that the Trial Court correctly held that Defendant's agreement to pay the Partnership Debts does not violate the Statute of Frauds, and is, therefore, enforceable.

Nevertheless, if the parties' agreement does violate the Statute of Frauds, Defendant's partial performance takes the agreement out of the Statute. "Tennessee courts . . . recognize a part performance exception to the Statute which is applicable to oral contracts other than for the sale of land." *Schnider v. Carlisle Corp.*, No. W2000-01695-COA-R3-CV, 2001 WL 400387, at \* 3 (Tenn. Ct. App. Apr. 19, 2001). In explaining the purpose and application of this exception to the Statute of Frauds, this Court held:

This doctrine of partial performance to take the verbal contract out of the operation of the Statute of Frauds is purely an equitable doctrine and is a judicial interpretation of the acts of the parties to prevent frauds. . . . "The plaintiff must be able to show such acts and conduct of the defendant as the court would hold to amount to a representation that he proposed to stand by his agreement and not avail himself to the statute to escape its performance; and also that the plaintiff, in reliance on this representation, has proceeded, either in performance or pursuance of his contract, so far to alter his position as to incur an unjust and unconscious injury and loss, in case the defendant is permitted after all to rely upon the statutory defense. . . ."

*Calabro v. Calabro*, 15 S.W.3d 873, 878 (Tenn. Ct. App. 2000) (quoting *Blasingame v. American Materials, Inc.*, 654 S.W.2d 659, 663 (Tenn. 1983)).

The Trial Court found that Defendant partially performed his agreement to pay the Partnership Debts after the 1989 Partnership dissolution. Consistently from 1989 until 1996, and sporadically from 1996 until 1998, Defendant made payments toward the Partnership Debts totaling $96,900, leaving only a balance of $47,890. This evidence is strong support that Defendant intended to perform his agreement to pay the Partnership Debts after the parties' dissolution. *See id.* The evidence does not preponderate against this finding by the Trial Court.

Moreover, we disagree with Defendant's argument on appeal that the doctrine of part performance does not apply because Plaintiff did not place himself in a detrimental position by relying upon Defendant's agreement to pay the Partnership Debts. The proof in the record shows that over a number of years and long after the Partnership ended, Plaintiff justifiably relied upon Defendant to pay a debt incurred in the first place for their Partnership's business. At the time of the Partnership dissolution, Defendant kept most of the inventory which had been purchased with the Line of Credit proceeds. Partial performance by both parties occurred. Further, once Defendant stopped making regular payments on the Installment Loan, Plaintiff had to make the monthly payments of $2,200 from his own funds, and although the proof in the record regarding the terms of the Installment Loan is minimal, it is likely that if Plaintiff did not make the regular payments, he risked penalties and interest accumulation. Accordingly, we hold that the Trial Court correctly held that even if the agreement was within the Statute of Frauds, the doctrine of partial performance rendered it enforceable.

Defendant's final argument on appeal regarding the Partnership Debts is that if the debt belonged to the Partnership, then Plaintiff is equally liable for the debt. In light of our findings that the evidence does not preponderate against the Trial Court's determination that Defendant agreed to pay the Partnership debts, the principle of law relied upon by Defendant is not applicable to the facts found by the Trial Court.

## CONCLUSION

The judgment of the Trial Court is affirmed and this cause is remanded to the Trial Court for such further proceedings as may be required, if any, consistent with this Opinion, and for collection of the costs below. The costs on appeal are assessed against the Appellant, Jack Johnson, and his surety.

_____
D. MICHAEL SWINEY, JUDGE